UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :
JEANNINE RENEE LAM,                                                  :
                                                                     :
                                        Plaintiff,                   :
                                                                     :               **MEMORANDUM**
                          -v-                                        :               **OPINION & ORDER**
                                                                     :
NEW YORK CITY DEPARTMENT OF                                          :               18 Civ. 2756 (PGG)
EDUCATION,                                                           :
                                                                     :
                                        Defendant.                   :
                                                                     :
-------------------------------------------------------------------- X

PAUL G. GARDEPHE, U.S.D.J.:

In this action, pro se Plaintiff Jeannine Renee Lam alleges employment

discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

§ 12112 et seq, the New York State Human Rights Law ("NYSHRL"), New York Executive

Law § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), New York City

Administrative Code § 8-101 et seq. (See Dkt. No. 1) Defendant is the New York City

Department of Education ("DOE"). Plaintiff alleges that she suffers from anxiety, depression,

degenerative spine or disk disease, and post-traumatic stress disorder, and that DOE

discriminated against her, failed to accommodate her disabilities, retaliated against her for

engaging in protected activities, did not hire her for or promote her to more desirable positions,

and created a hostile work environment based on her disabilities.

DOE has moved to dismiss.[1]  (See Dkt. No. 18)  In a March 31, 2019 Order, this Court granted DOE's motion as to Plaintiff's NYSHRL and NYCHRL claims, but denied DOE's motion as to Plaintiff's ADA claims.  (Dkt. No. 26)  The purpose of this memorandum opinion is to explain the Court's reasoning.

## BACKGROUND[2]

### I.   PLAINTIFF'S EMPLOYMENT AT DOE

Plaintiff is a special education teacher who has been employed by DOE since 2001.  (Am. Cmplt. (Dkt. No. 8) ¶ 1)  While employed by DOE, Plaintiff has suffered from anxiety, depression, degenerative spine or disk disease, and post-traumatic stress disorder ("PTSD").  (Id. at 4 & ¶ 42; see also id. ¶¶ 6, 22)[3]  During the 2014-2015 and 2015-2016 school years, Plaintiff worked at I.S. 203 as a special education teacher.  She was transferred to the Absent Teacher Reserve ("ATR") pool on September 26, 2016.  (Id. ¶¶ 4, 40)  During her tenure at ATR, Plaintiff worked at four separate schools.  (Id. at 27 & ¶¶ 41, 47, 52)

#### A.   I.S. 203 Assignment

Plaintiff was hired as a special education teacher at I.S. 203 on August 7, 2014. (Id. ¶ 4)  Her supervisor, Principal Leimsider, became aware of her anxiety issues "right away."

---

[1]  Although Defendant moved to dismiss claims under the Family Medical Leave Act and the Genetic Information Nondiscrimination Act, the Amended Complaint alleges no such claims. (See Am. Cmplt. (Dkt. No. 8)

[2]  The facts are taken from the Amended Complaint, materials attached to the Amended Complaint, and allegations made in Plaintiff's opposition brief.  While, "[i]n general, 'a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss[,] the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as h[er] opposition memorandum.'"  Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 (S.D.N.Y. Jan. 26, 1999) (quoting Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)).

[3]  All references to page numbers are as reflected in this District's Electronic Case Filing System.

(Id. ¶ 5)  On October 7, 2014, the assistant principal observed Plaintiff in class and issued a "disappointing" evaluation that listed "areas needed for improvement."  (Id. ¶ 7)  Plaintiff was observed again on December 18, 2014, and the results "reflected a significant decline in the evaluator ratings."  (Id. ¶ 10)  On March 9, 2015, Plaintiff received a disciplinary letter related to absences from work, and on March 18, 2015, she received a disciplinary letter for being late to work.  (Id. ¶¶ 16, 20)

On March 22, 2015, Plaintiff sent an email to the I.S. 203 principal and other staff informing them that her PTSD symptoms were worsening due to an increased workload. Plaintiff requested an immediate reduction in workload.  (Id. ¶ 22)  On March 25, 2015, Principal Leimsider informed Plaintiff that the school had received a letter alleging that Plaintiff had used corporal punishment on her students; Plaintiff maintains that these allegations are false.  (Id. ¶ 24)  The next day Plaintiff took a Restoration of Health Leave from work due to her "anxiety," which she claims was precipitated by the principal's alleged retaliatory acts.  (Id. ¶ 25)

While on leave, Plaintiff took muscle relaxants to address her PTSD symptoms, and she received counseling to manage her emotions.  (Id. ¶ 26)  During Plaintiff's leave, Principal Leimsider contacted her on multiple occasions to schedule a disciplinary hearing concerning the corporal punishment allegations.  (Id. ¶¶ 24, 27)

At the beginning of the 2015-2016 school year, Plaintiff contacted Principal Kotzer, who had replaced Principal Leimsider, who had retired.  Plaintiff explained her disabilities and discussed ideas for how to minimize her PTSD symptoms at work.  (Id. ¶ 29)  On October 23, 2015, three administrators observed Plaintiff co-teach a lesson.  Plaintiff received a poor evaluation rating, while her co-teacher received a "highly effective" evaluation for the same lesson.  (Id. ¶ 30)

On November 19, 2015, Principal Kotzer brought charges against Plaintiff under New York Education Law § 3020-a.[4] (Id. ¶ 32) Plaintiff alleges that the investigation preceding these formal charges occurred while she "was on a reported medical leave." (Id.) On December 7, 2015, Plaintiff was removed from the classroom and "placed in solitary, mini-rubber room confinement" at I.S. 204. (Id. ¶ 34) Plaintiff "remained there until [she] was assigned as a teacher in ATR." (Id.)

On May 17, 2016, Plaintiff applied for an ADA accommodation, and requested that she be assigned a permanent placement in a classroom. (Id. ¶ 35) On July 20, 2016, Plaintiff was informed that her accommodation request for a permanent placement in a classroom "was denied by the NYDOE Medical Unit." (Id. ¶ 39)

On June 27, 2016, Plaintiff sent an email to Principal Kotzer stating that she would be absent from work because of an unexpected emergency involving her mother. (Id. ¶ 37) Principal Kotzer instructed Plaintiff to report to work, stating that "[Plaintiff] should have learned from previous mistakes." (Id.) As a result, Plaintiff suffered an anxiety attack, and did not report to work. (Id.) On July 27, 2016, Plaintiff applied for FMLA leave regarding her June 27, 2016 absence. Plaintiff's request was denied. (Id. ¶ 38)

## B.  Absent Teacher Reserve Pool Assignment

Plaintiff was transferred to the Absent Teacher Reserve pool on September 26, 2016 and assigned to I.S. 126. (Id. ¶¶ 40-41) On September 29, 2016, I.S. 126 Principal Alexander Angueira sent an email to ATR assignment personnel "formally requesting that [Plaintiff] not be assigned to [his] school again." (Id. ¶ 43; see also id. at 31) In the email,

---

[4]  The Amended Complaint does not disclose the nature of the charges against Plaintiff, but the statute cited by Plaintiff concerns disciplinary procedures and penalties for tenured teachers in New York.

Angueira explained that Plaintiff had told him that she suffers from PTSD, and that "it is triggered when she is around children[,] [e]specially when they misbehave." (Id. at 31) In the email, Angueira also reports that Plaintiff had told him that her assignment the previous day had "aggravated her body and sent it into spasms. She also stated that her left arm has been affected due to the fact that the doors in [Angueira's school] are too heavy for her to open." (Id.) Principal Angueira stated that Plaintiff was "not a fit for [his] Special Education vacancy," because he did "not have a program that doesn't involve being in front of students and opening and closing doors." (Id.)

In response, "ATR Assignment" sent an email stating:

Ms. Lam should be treated as any full time staff member and summoned to a disciplinary conference to address her issue. She should be provided 48 hours' notice of the conference in order to obtain union representation. Once the conference is held kindly fax the documentation to this unit at 718 935 2417[.] [O]nce received we can look into creating an exception from future assignments to your location. Without a letter we are unable to prevent future assignments to your school.

(Id.) After this exchange, "Principal Angueira refrained from assigning any work for [Plaintiff] to do. Instead, he had [Plaintiff] wait in the teacher's lounge." (Id. ¶ 44)

On October 13, 2016, citing Plaintiff's "Personal Medical Information," "Principal Angueira filed a request for [Plaintiff] to have a Mandated Medical Evaluation (Education Law Section 2568)." (Id. ¶ 46)

On November 14, 2016, Plaintiff was assigned to I.S. 85. (Id. ¶ 47) After a week at that location, Plaintiff told Principal Chang that – "on days when [she] was required to send students [home] with people who were strangers to [Plaintiff]" – her PTSD symptoms became "exacerbated." (Id. ¶ 48) At a staff meeting ten minutes later, Principal Chang asked the assistant principal "to take back [from Plaintiff] all of the paperwork provided to everyone at the

staff meeting," explaining that Plaintiff "was not a part of the permanent staff." (Id. ¶ 49) On November 22, 2016, Principal Chang "notified the superintendent that she was 'concerned about having [Plaintiff] around the students.'" (Id. at 21) On November 29, 2016, citing Plaintiff's "Personal Medical Information," Principal Chang "filed a request for [Plaintiff] to have a "Mandated Medical Evaluation," pursuant to Education Law § 2568. (Id. ¶ 50)

On December 19, 2016, Plaintiff was assigned to P.S. 2. (Id. ¶ 52) Plaintiff informed Principal Goldman in writing of her "severe anxiety" before starting at P.S. 2. (Id.)

On December 21, 2016, Plaintiff attended the Mandatory Medical Evaluation and was deemed "FIT." (Id. ¶ 53) That same day, she received an email stating that the DOE "'will be supplementing its supervision [of her] in the Absent Teacher Reserve (ATR) pool.'"

Plaintiff requested a laptop and smartboard for use at P.S. 2, but on January 9, 2017, Principal Goldman informed Plaintiff that she could not use these resources in the classroom. (Id. ¶ 54)

On January 10, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶¶ 55, 58) The same day, Principal Goldman denied Plaintiff's request to "attend the School Leadership Team Meeting (SLT), a group of teachers, parents and administrators." (Id. ¶ 56) Instead, Principal Goldman instructed Plaintiff to report to a kindergarten classroom. (Id. ¶ 57)

On January 13, 2017, "Principal Goldman called [Plaintiff] to a disciplinary meeting with claims of insubordination and interruption of work." (Id. ¶ 59) Goldman claimed that Plaintiff had interfered with the kindergarten teachers' preparation of a parent newsletter. (Id. ¶ 59) Plaintiff complained that one of the kindergarten teachers had harassed her, but the principal "disregarded [Plaintiff's] claims of harassment." (Id. ¶¶ 57, 60)

6

About twenty minutes later, Plaintiff asked "to be relieved of [her] upcoming coverage of a Kindergarten class." (Id. ¶ 61) "Principal Goldman demanded [that Plaintiff] punch out and go home if [she] wasn't going to report to [her kindergarten] assignment." (Id.) "Out of fear of further accusations of insubordination, [Plaintiff] promptly reported to [her] assigned [class] and neglected [her] own anxiety." (Id.)

On January 18, 2017, Principal Goldman summoned Plaintiff to another disciplinary meeting concerning allegations that Plaintiff had been recording students. (Id. ¶ 62) That same day, the ATR Assignment Unit told Plaintiff "to report to a new school the next day due to Principal Goldman's disciplinary actions." (Id. ¶ 63) Later that day, Plaintiff took a Restoration of Health Leave because her anxiety had disrupted her sleep and eating habits. Plaintiff remained on leave until January 27, 2017. (Id. ¶ 64; Pltf. Opp. (Dkt. No. 22) at 4)

While Plaintiff was on leave, Principal Goldman contacted her to schedule a disciplinary meeting concerning the allegations that she had recorded students. (Am. Cmplt. ¶ 64) On February 3, 2017, after Plaintiff had returned from leave, a disciplinary proceeding was conducted. As a result of that proceeding, "a disciplinary letter was put in [Plaintiff's] file by P.S. 2 Principal Goldman with an accusation that Chancellor's Regulation A-820 Confidentiality and Release of Student Records; Records retention, was violated." (Id. ¶ 65)

On February 6, 2017, Plaintiff was assigned to P.S. 69. (Id. at 27)

Since being assigned to the ATR pool, Plaintiff has applied for various permanent teacher placements, but has not been selected. (Id. at 27) Plaintiff received satisfactory evaluations from her field supervisor during the 2016-2017 school year, but her annual performance rating was "Unsatisfactory" due to the disciplinary letters filed by Principal

Goldman at P.S. 2.  (Id. ¶¶ 67-68)  Plaintiff has received satisfactory evaluations from her field supervisor during the 2017-2018 school year.  (Id. ¶ 69)

<h1 style="text-align:center">DISCUSSION</h1>

## I.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must provide grounds upon which her claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'"  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, a court accepts as true all well-pled factual allegations but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  Id.  Moreover, a court will give "no effect to legal conclusions couched as factual allegations."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  Where a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible" – dismissal is appropriate.  Twombly, 550 U.S. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[] in framing the complaint.'" DeLuca v. AssetIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (first alteration in original) (quoting Chambers, 282 F.3d at 153).

A district court may also "rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records . . . in deciding a motion to dismiss."). "In the motion to dismiss context, . . . a court should generally take judicial notice 'to determine what statements [the documents] contain[ ] . . . not for the truth of the matters asserted.'" Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

In ruling on a motion to dismiss, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and alterations

9

omitted); see also Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (noting that pro se litigants "generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest'" (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996))). That said, a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face. See Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). Although courts are "obligated to draw the most favorable inferences" from a complaint, they "cannot invent factual allegations that [plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

### B.   Disability Discrimination Under the ADA

Section 102(a) of the ADA creates a private right of action for disability-based employment discrimination. See 42 U.S.C. § 12112. Claims of disability discrimination under the ADA are governed by the three-step burden shifting framework set out in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of unlawful discrimination. If plaintiff meets this burden, defendant must rebut the prima facie case of discrimination by producing a legitimate, non-discriminatory reason for the allegedly discriminatory action. Where a defendant rebuts plaintiff's prima facie case, the burden then shifts to plaintiff to demonstrate that defendant's stated justification for an adverse employment action is merely pretext, and that the real reason for the adverse action is discrimination. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-56 (1981). Such discrimination can manifest itself in a variety of ways, including by a

failure to accommodate, retaliating against an employee for engaging in a protected activity, and creating a hostile work environment.

## II.  ANALYSIS

### A.  Allegations Premised on Pre-March 16, 2016 Conduct

The ADA "require[s] claimants to file a charge of discrimination or retaliation with the EEOC within three hundred days of the discriminatory or retaliatory act." Apionishev v. Columbia Univ., No. 09 Civ. 6471 (SAS), 2011 WL 1197637, at *3 (S.D.N.Y. Mar. 25, 2011). "'[C]laims regarding acts that occurred more than three hundred days prior to the employee's initiation of administrative review are thus time-barred.'" Id. (quoting Klein v. N.Y. Univ., No. 07 Civ. 0160 (RLC), 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008)). "An exception exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination," Valtchev v. City of N.Y., 400 F. App'x 586, 588 (2d Cir. 2010), but this doctrine is "heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." Trinidad v. N.Y.C. Dep't of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (internal quotation marks omitted). Moreover, "'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" Valtchev, 400 F. App'x at 588-89 (quoting Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993)).

Plaintiff filed a charge of discrimination with the EEOC on January 10, 2017. (Am. Cmplt. ¶ 55) DOE argues that liability cannot be predicated on conduct that took place before March 16, 2016 – more than 300 days before Plaintiff's EEOC complaint. See Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325 (2d Cir. 1999). Plaintiff does not dispute DOE's analysis but says that she included the pre-March 16, 2016 allegations "as background

information." (Pltf. Opp. (Dkt. No. 22) at 2)  Accordingly, Plaintiff's ADA claims are dismissed to the extent they are predicated on pre-March 16, 2016 conduct.

## B.     ADA Claims

To establish a prima facie case of discrimination under the ADA, a plaintiff must establish "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

Here, DOE argues that Plaintiff's ADA claims fail because: (1) she is not disabled under the ADA; (2) she is not able to perform the essential functions of the ATR position with or without an accommodation; (3) her accommodation request – a permanent classroom assignment notwithstanding her ATR status – is unreasonable; (4) she has not "allege[d] sufficient facts to establish any inference of discrimination"; (5) she "does not link any alleged harassment sufficiently to her disability to show that she suffered a hostile work environment"; and (6) she does not "sufficiently plead a causal connection between her protected activity and any alleged adverse employment action to show retaliation." (Def. Br. (Dkt No. 20) at 15-16)

### 1.     ADA Disability

DOE argues that Plaintiff has not sufficiently pled that "[s]he is disabled within the meaning of the ADA." Brady, 531 F.3d at 134. Under the ADA, an individual is disabled if he or she: (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an

12

impairment." 42 U.S.C. § 12102(1); accord Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471, 474 (2d Cir. 2014). "Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial." Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005). Major life activities are "'activities that are of central importance to daily life.'" Id. (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002)). They "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Moreover, although a plaintiff has a minimal burden in establishing a prima facie case, the above terms are to be "interpreted strictly to create a demanding standard for qualifying as disabled." Toyota, 534 U.S. at 197; accord Troeger v. Ellenville Cent. Sch. Dist., 523 F. App'x 848, 852 (2d Cir. 2013).

Here, Plaintiff alleges that she suffers from PTSD, anxiety, degenerative spine disease, and chronic depression (see Am. Cmplt. (Dkt. No. 8) at 4 & ¶ 42; Pltf. Opp. (Dkt. No. 22) at 4), and that these conditions substantially limit her mobility and ability to sleep, walk, and lift. (See Pltf. Opp. (Dkt. No. 22) at 4, 10) She states that those major life activities are interrupted "due to the exacerbation of chronic degenerative spine disease during PTSD episodes." (Id. at 4)

DOE contends that because Plaintiff did not cite these "major life activities" in the Amended Complaint or "attach relevant documentation," her allegations are insufficient. (Def. Reply (Dkt. No. 24) at 8) As discussed above, however, this Court is required to liberally construe a pro se plaintiff's allegations and may consider her opposition brief in determining the sufficiency of her allegations. See, e.g., Perez v. Ponte, 236 F. Supp. 3d 590, 633 (E.D.N.Y.

13

2017). Moreover, a plaintiff alleging disability discrimination is not required to attach any particular documentation to her complaint. Factual allegations in the complaint are sufficient where they are well-pleaded. See, e.g., Amaker v. Goord, No. 98 Civ. 3634 (JGK), 2000 U.S. Dist. LEXIS 7562, at *16 (S.D.N.Y. May 31, 2000) ("allegations are sufficient to survive a motion to dismiss").

Although DOE argues that Plaintiff has not sufficiently pled that her major life activities were "exacerbated by the rotation of her teaching assignments" (Def. Reply (Dkt. No. 24) at 8), Plaintiff has alleged that the rotation of her teaching assignments has exacerbated her PTSD, which limits several major life activities.[5] The Court concludes that Plaintiff's allegations are sufficient to plead that she is disabled within the meaning of the ADA.

## 2. Essential Functions

DOE also argues that Plaintiff cannot perform the essential functions of the ATR assignment. "Essential functions" refers to the "'fundamental' duties to be performed in the position in question." Stone v. City of Mt. Vernon, 118 F.3d 92, 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2(n)(1) (1996)). ADA regulations note that a function "may be essential because the reason the position exists is to perform that function." 29 C.F.R. § 1630.2(n)(2)(i).

"Although a court will give considerable deference to an employer's determination as to what functions are essential, there are a number of relevant factors that may influence a court's ultimate conclusion as to a position's essential functions." McMillan v. City

---

[5] See Am. Cmplt. (Dkt. No. 8) ¶ 35 (alleging that Plaintiff requested a permanent placement because her rotation from school to school had increased her anxiety); id. at 27 (alleging that Plaintiff requested an accommodation of a permanent placement because her symptoms have been exacerbated by frequent reassignments to different schools); Pltf. Opp. (Dkt. No. 22) at 4, 10 (contending that "several major life activities [have been] interrupted, such as sleep . . . walking and lifting . . . due to the exacerbation of chronic degenerative spine disease during PTSD episodes").

14

of N.Y., 711 F.3d 120, 126 (2d Cir. 2013); see also Stone, 118 F.3d at 97 (relevant factors to consider include "[t]he employer's judgment," "[w]ritten job descriptions," "[t]he amount of time spent on the job performing the function," "[t]he terms of a collective bargaining agreement," "[t]he work experience of past [employees] in the job," and the "work experience of [current employees] in similar jobs" (citing 29 C.F.R. § 1630.2(n))). "Usually no one listed factor will be dispositive . . . ." Stone, 118 F.3d at 97. Moreover, a court must avoid deciding cases based on "unthinking reliance on intuition about the methods by which jobs are to be performed." Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 140 (2d Cir. 1995). Instead, a court must conduct "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." Id.

DOE argues that Plaintiff "cannot perform the essential functions of her employment as an ATR" because that position necessarily requires "rotating to assignments and . . . working with school children."[6] (Def. Br. (Dkt. No. 20) at 18)

In arguing that Plaintiff cannot perform the essential functions of the ATR position, DOE relies on Principal Angueira's September 29, 2016 email – set forth in the Amended Complaint (Dkt. No. 8) at 31 & ¶ 43) – in which Angueira reports to ATR Assignment personnel that Plaintiff told him that she suffers from PTSD and that "it is triggered when she is around children[,] [e]specially when they misbehave." (Am. Cmplt. (Dkt. No. 8) at 31) According to Angueira, Plaintiff also said that doors at the school were "too heavy for her to open," and that her efforts to open doors at the school had caused injury to her left arm. (Id.)

---

[6] Elsewhere DOE directly contradicts this assertion, arguing that "Plaintiff . . . alleges facts . . . suggesting she is fully capable of working as an ATR without accommodation." (Def. Br. (Dkt. No. 20) at 20)

Although Plaintiff quotes Principal Angueira's email in the Amended Complaint – when Plaintiff's allegations are read liberally – it is clear that she disputes his conclusion that she cannot perform the essential functions of an ATR at his school. In the Amended Complaint, Plaintiff asserts that – while trying to open a heavy stairway exit door – she exacerbated her disc bulges. Plaintiff reported this injury to Principal Angueira, and he then requested that she not be assigned to his school again, because he did not have a teacher position that did not involve "opening and closing doors," and so she was not "a fit for [his] Special Education vacancy." (Am. Cmplt. (Dkt. No. 8) ¶¶ 42-43) He then refused to assign any other work to Plaintiff, and instructed her to sit in the teacher's lounge. (See id. ¶ 44)

In her opposition brief, Plaintiff states that she had reported her PTSD symptoms to Principal Angueira and provided him with "Personal Health Information," and that his immediate response was that she should "find another career because of the stressful nature of teaching, implying that someone with PTSD could not manage to work in the education system." (Pltf. Opp. (Dkt. No. 22) at 7) Plaintiff refused to quit, however, and Principal Angueira then assigned her to sit in the teachers' lounge. According to Plaintiff, in requesting that she be reassigned, Principal Angueira did not give Plaintiff "the opportunity to prove" to him that she was able to teach. (Id.)

DOE also relies on Principal Gordon-Chang's Medical Evaluation Request, in which Gordon-Chang writes: "[Plaintiff] stated that dropping off and picking up students in different parts of the building increases her 'severe' anxiety" and "[a]ny type of schedule change is problematic" such that it "may affect how she works with students." (Blair Decl. (Dkt. No. 19) Ex. 3) Construing Plaintiff's allegations liberally and interpreting them to raise the strongest

16

arguments they suggest, this evidence does not demonstrate that Plaintiff cannot be around children, as Defendant argues.

In sum, reading Plaintiff's allegations liberally, she reported her PTSD symptoms and her injury opening the door to Principal Angueira, but did not tell him that her PTSD prevented her from being around misbehaving children. Plaintiff likewise reported to Principal Gordon-Chang that she suffered from severe anxiety under certain circumstances, because she was afraid that her medical condition would affect her work. Plaintiff did not tell Principal Gordon-Chang that she could not work with children. Moreover, Plaintiff has pled facts demonstrating that she has been successful in her most recent ATR assignment at P.S. 69, and has received satisfactory reviews for the 2016-17 and 2017-18 school years. (Am. Cmplt. (Dkt. No. 8) ¶¶ 67, 69) Accordingly, the gist of Plaintiff's ADA claims is that she is fully capable of teaching with a reasonable accommodation limiting intra-day transfers to distant classrooms. (Am. Cmplt. (Dkt. No. 8) ¶¶ 66-67, 69)

DOE also argues (Def. Br. (Dkt. No. 20) at 19) that Plaintiff has alleged that she cannot perform her job if she must rotate from one school to another. The allegations DOE cite relate to daily schedule changes, however, where Plaintiff "often each period, [is made to] travel . . . from the 5th floor to the outdoor Pre-K portables back to back." (Am. Cmplt. (Dkt. No. 8) at 27) DOE does not contend that an "essential function" of the ATR position is the ability to change locations from one hour to the next, and to travel five floors in between class periods.

The Court concludes that Plaintiff has alleged sufficient facts to demonstrate that she can perform the essential job functions of the ATR position.

17

### 3.  **Accommodation Request**

DOE argues that Plaintiff does not need an accommodation to perform the ATR position, and that the accommodation she seeks – a permanent classroom placement – is unreasonable.

"The ADA . . . require[s] an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer." Noll v. Int'l. Bus. Mach. Corp., 787 F.3d 89, 94 (2d Cir. 2015).  To prevail on a failure to accommodate claim under the ADA, plaintiff must show that:

> "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

Id. (third alteration in original) (quoting McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009)).

"In the context of the ADA, reasonable accommodation may include, inter alia, modification of job duties and schedules. . . ." McBride , 583 F.3d at 97 (citing 42 U.S.C. § 12111(9)(B)).  "'Employees are not entitled to hold out for the most beneficial accommodation, [however,] and [an] employer need not offer the accommodation that the employee prefers.  Instead, when any reasonable accommodation is provided, the statutory inquiry ends.'" Turowski v. Triarc Co., 761 F. Supp. 2d 107, 111 (S.D.N.Y. 2011) (second alteration in original) (quoting Waltzer v. Triumph Apparel Corp., No. 09 Civ. 288 (DLC), 2010 WL 565428, at *6 (S.D.N.Y. Feb. 18, 2010)).  That being said, "'[o]rdinarily, questions of reasonableness are best left to the fact finder.'" Baker v. The Home Depot, 445 F.3d 541, 548 (2d Cir. 2006) (alteration in original) (quoting EEOC v. Universal Mfg. Corp., 914 F.2d 71, 73

(5th Cir. 1990)); see also Noll, 787 F.3d at 94 ("The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder.").

Here, DOE disputes only the third element of the reasonable accommodation inquiry, arguing that because Plaintiff alleges that "she has been able to succeed at [P.S. 69]" and that it is a "good fit," "no accommodation [is] required." (Def. Br. (Dkt. No. 20) at 20 (citing Harvin v. Manhattan & Bronx Surface Transit Operating Auth., No. 14 Civ. 5125 (CBA), 2018 U.S. Dist. LEXIS 56759, at *14 (E.D.N.Y. Mar. 30, 2018)) But Plaintiff's accommodation request relates to her allegations that in prior assignments her schedule has changed from class to class, and that she has been transferred from one school to the next multiple times within a school year. Acknowledging Plaintiff's allegations that she has more recently been in a more stable position at P.S. 69, those allegations do not negate Plaintiff's claims that her accommodation requests were previously denied. Nor does DOE argue that Plaintiff's currently stable position at P.S. 69 is permanent in nature. Indeed, DOE repeatedly notes that Plaintiff's assignment is subject to "change daily." (Def. Br. (Dkt. No. 20) at 20) Accordingly, Plaintiff's reasonable accommodation claim will not be dismissed on the ground that no accommodation is necessary.

DOE also argues that Plaintiff's request for a "permanent placement in an elementary classroom rather than being moved around to numerous new work environments" (see Am. Cmplt. (Dkt. No. 8) ¶ 35) is unreasonable, because it would eliminate the essential function of her ATR position, namely that "ATR schedules are, by nature, not consistent day to day." (Def. Br. (Dkt. No. 20) at 24) To the extent Plaintiff is requesting a permanent placement, the Court finds that this request is incompatible with her ATR position. However, Plaintiff first requested a permanent placement on May 17, 2016, long before she was assigned to ATR on

19

September 26, 2016. Accordingly, her accommodation request seeking a permanent placement is sufficient to the extent it was made prior to her assignment to ATR.

Plaintiff also alleges that she has had a more stable, consistent schedule as an ATR at P.S. 69. Accordingly, her accommodation request can reasonably be read to seek less change. For example, Plaintiff alleges that daily schedule changes – where she "often each period [is made to] travel . . . from the 5th floor to the outdoor Pre-K portables back to back" (Am. Cmplt. (Dkt. No. 8) at 27) – exacerbates her medical conditions. To the extent that Plaintiff requests an assignment that does not involve daily schedule changes, Defendant has not shown that such an accommodation request is unreasonable or would impose undue hardship. Indeed, a modification in work schedule is a classic reasonable accommodation. E.g., Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 120 (2d Cir. 2004) ("A modified work schedule may constitute a reasonable accommodation in certain circumstances."). Finally, the reasonableness of Plaintiff's request presents a fact-specific inquiry that is not suitable for adjudication at the motion to dismiss stage. E.g., Noll, 787 F.3d at 94. For all these reasons, Plaintiff's ADA claim will not be dismissed on the grounds that she seeks an accommodation that is unreasonable.

### 4.    Adverse Employment Action

DOE argues that Plaintiff's ADA claim fails because she has not suffered an adverse employment action due to her disability. "To constitute an adverse employment action in the context of a discrimination claim, an action must cause 'a materially adverse change in the terms and conditions of employment.'" Henry v. N.Y.C. Health & Hosp. Corp., 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (quoting Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008)). "'To be materially adverse, a change in working conditions must be more disruptive than a mere

20

inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" Id. (quoting Mathirampuzha, 548 F.3d at 78). Moreover, to withstand a motion to dismiss, a complaint must include allegations that the adverse employment action "'took place under circumstances giving rise to an inference of discrimination.'" Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 234 (2d Cir. 2015) (quoting Graham v. Long Isl. R.R., 230 F.3d 34, 39 (2d Cir. 2000)).

        In the Amended Complaint and in her opposition, Plaintiff lists the following post-March 16, 2016 adverse employment actions she suffered as a result of her disability: (1) Plaintiff was not provided with an assignment schedule, even though other tenured Special Education teachers received an assignment schedule (see Am. Cmplt. (Dkt. No. 8) at 21); (2) while at P.S. 85, Plaintiff was not given a copy of the school's safety procedures (see id. ¶ 49); (3) Plaintiff was deprived of building-level seniority benefits (see id.); (4) Plaintiff was transferred from schools at principals' request (see id. ¶¶ 43, 63); (5) Plaintiff suffered retaliation after voicing concerns about the safety of students (see id. ¶¶ 48-49); (6) Plaintiff was denied the use of certain resources, such as a laptop and smartboard (see id. ¶ 54); (7) Plaintiff suffered diminished material responsibilities when placed on "lunchroom duties" and assigned to the teacher's lounge (see id. at 28 and ¶ 34); (8) Plaintiff was issued unwarranted disciplinary letters on January 13, 2017 and February 3, 2017 (see id. ¶¶ 59-60, 62, 65); (9) Plaintiff was given an "unsatisfactory" rating (see id. ¶ 68); (10) Plaintiff was not able to earn "per session remuneration" due to her "unsatisfactory" rating" (see id.; see also id. at 6); and (11) Plaintiff

21

was not hired as "a permanent non-ATR Special Education teacher." (See id. at 27-28 & ¶¶ 39, 61; Pltf. Opp. (Dkt. No. 22) at 10-11)[7]

DOE does not dispute that the first five actions cited above constitute adverse employment actions. As for DOE's failure to supply Plaintiff with a laptop and smartboard, DOE argues that this claim amounts to nothing more than "mere inconvenience." Sanders v. N.Y.C. Human Resources Admin., 361 F.3d 749, 755 (2d Cir. 2004). Courts have held that where the equipment at issue is desirable, but the job can be performed without it, the failure to provide the desired equipment does not constitute an adverse employment action. Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (holding that assignment of a Jeep rather than a Ford was not an adverse employment action); Ray v. N.Y. State Ins. Fund, No. 16 Civ. 2895 (NRB), 2018 WL 3475467, at *15 (S.D.N.Y. July 18, 2018) (holding that "the refusal to replace [plaintiff's] chair does not rise to the level of an adverse employment action"); Lee v. Healthfirst, Inc., No. 04 Civ. 8787 (THK), 2007 WL 634445, at *14 (S.D.N.Y. Mar. 1, 2007) (assignment of older model of car and cell phone was not an adverse employment action); Wells-Williams v. Kingsboro Psychiatric Ctr., No. 03 Civ. 134 (CBA), 2007 WL 1011545, at *3 (E.D.N.Y. Mar. 30, 2007) (assignment of adequate but less desirable kitchen knives to chef was a "mere inconvenience" and not an adverse employment action). Plaintiff does not allege that the laptop and smartboard were essential to her job performance. Accordingly, DOE's failure to supply these materials does not constitute an adverse employment action.

As to Plaintiff's claim that she was not hired as a permanent non-ATR Special Education teacher, DOE argues that Plaintiff has not alleged sufficient facts. But in her

---

[7] Plaintiff also lists the denial of her request for a reasonable accommodation. That claim is discussed above.

opposition, Plaintiff argues that she "was rejected as a candidate [for a Special Education teacher vacancy] once Principal [Angueira became] aware of her disability[,] and ultimately she was not hired through this process." (Pltf. Br. (Dkt. No. 22) at 11-12) The Court concludes that Plaintiff's allegations on this point are sufficient to plead an adverse employment action. E.g., Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) ("[Plaintiff]'s claim of discriminatory failure to promote falls within the core activities encompassed by the term 'adverse actions.'").

As for Plaintiff's allegations that she suffered a "change in responsibilities," DOE argues that because Plaintiff's "job duties and assignments [are] inherently at the discretion of DOE" – due to her being an ATR – her assignment to the teacher's lounge and the cafeteria without any pedagogical responsibilities does not constitute an adverse employment action. Significantly diminished material responsibilities are a classic example of a materially adverse employment action, however, and DOE does not argue otherwise. Henry, 18 F. Supp. 3d at 404 (noting that "'significantly diminished material responsibilities'" constitute a materially adverse employment action (quoting Mathirampuzha, 548 F.3d at 78)); see also La Grande v. DeCrescente Distributing Co., 370 F. App'x 206, 211 (2d Cir. 2010) (holding that "barring [plaintiff] from the training [provided to other employees] diminished his material responsibilities or opportunities").

Finally, DOE argues that the disciplinary letters issued to Plaintiff and the "unsatisfactory" rating do not constitute adverse employment actions, and that Plaintiff's complaint that she cannot earn per session remuneration is misplaced, because she is not eligible for such compensation under DOE regulations. (Def. Reply (Dkt. No. 20) at 11-12) The Court agrees that the disciplinary letters and the "unsatisfactory" rating do not constitute adverse

23

employment actions. See Gordon v. N.Y.C. Bd. of Educ., No. 01 Civ. 9265 (SAS), 2003 WL 169800, at *6 (S.D.N.Y. Jan. 23, 2003) ("It is well-settled that negative evaluations alone, without any accompanying adverse consequences, such as a demotion, diminution of wages, or other tangible loss, do not constitute adverse employment actions." (collecting cases)).

As to Plaintiff's complaint regarding per session remuneration, Defendant is correct that Plaintiff is not eligible for such compensation due to her reassignment to ATR. See Chancellor's Regulation C-175, available at https://www.schools.nyc.gov/docs/default-source/default-document-library/c-175-english. Moreover, to the extent Plaintiff's discrimination claim is based on her assignment to ATR, that is insufficient. See, e.g., Torres v. N.Y.C. Dep't of Educ., No. 18 Civ. 2156 (NGG), 2019 U.S. Dist. LEXIS 82897, at *17 (E.D.N.Y. May 14, 2019) ("The mere placement of Plaintiff in the ATR does not constitute an adverse employment action for purposes of a discrimination or retaliation claim." (collecting cases)). Accordingly, the allegations concerning these matters are insufficient to plead adverse employment actions.

### 5.   Retaliation

In order to establish a prima facie case of retaliation, a plaintiff must show that:

(1) [s]he engaged in an activity protected by the ADA; (2) [the defendant was] aware of this activity; (3) [the defendant] took adverse . . . action against h[er]; and (4) a causal connection exists between the alleged adverse action and the protected activity.

Treglia, 313 F.3d at 719.

In the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting

Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); see also Welch v. United Parcel Service, Inc., 871 F. Supp. 2d 164, 182 (E.D.N.Y. 2012) ("An action is deemed 'adverse' within the meaning of the ADA if it is the type of action that 'could well dissuade' a reasonable person from making or supporting a charge of discrimination.").

Here, in connection with Plaintiff's EEOC charge, DOE argues that Plaintiff has not pled facts demonstrating that DOE was "aware of this activity." (Def. Br. (Dkt. No. 20) at 24-25) Plaintiff does not dispute DOE's claim, and the Court agrees that the Amended Complaint does not allege that the DOE learned of Plaintiff's EEOC complaint. Accordingly, to the extent Plaintiff's retaliation claim rests on her filing of an EEOC complaint, the claim is insufficient.

More broadly, DOE contends that Plaintiff has not pled facts that "establish a causal connection between her protected activity and the alleged retaliation actions." (Id. at 25) But Plaintiff alleges – both in the Amended Complaint's factual allegations and in documents attached to the Amended Complaint that were submitted to the EEOC – that her supervisors took retaliatory action against her shortly after she brought her disabilities to their attention and sought an accommodation. These allegations suffice to demonstrate a causal connection. E.g., Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action.").

DOE's motion to dismiss Plaintiff's ADA retaliation claim will be denied.

### 6. Hostile Work Environment

Hostile work environment claims brought under the ADA are evaluated under the same standard as hostile work environment claims bought under Title VII. See, e.g., Monterroso

v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008). To establish a hostile work environment claim, plaintiff "must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Littlejohn v. City of N.Y., 795 F.3d 297, 321 (2d Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "'The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Id. (quoting Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014)). In evaluating hostile work environment claims, courts consider the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (quoting Harris, 510 U.S. at 23).

DOE argues that Plaintiff "presents no facts alleging that she suffered any animus because of her disability." (Def. Br. (Dkt. No. 20) at 26) The Court agrees that Plaintiff has not adequately pled a hostile work environment claim.

While Plaintiff alleges that the principals she worked for were aware of her disabilities, she has not pled facts showing that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive." Littlejohn, 795 F.3d at 320-321. "'Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe,'" Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting Ennis v. Sonitrol Mgmt. Corp., No. 02 Civ. 9070 (TPG), 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006)), and Plaintiff has not pled facts showing such severe abuse or trauma.

For example, Plaintiff claims that on "September 28, 2016, as a result of the . . . hostile working conditions . . . [she] was injured physically" when she had to "open[] a stairway exit door." (Am. Cmplt. (Dkt. No. 8) ¶ 42) But Plaintiff does not explain what the connection is between the alleged hostile working conditions and her opening of the heavy exit door. Similarly, Plaintiff claims that she was assigned no work on several occasions; that she was not given materials other teachers were given because she "was not a part of the permanent staff"; that a kindergarten teacher told her that she preferred substitute teachers to ATR teachers like her; and that she was subject to discipline. These allegations do not rise to the requisite level of severity. See, e.g., Rosario v. City of N.Y., No. , 2013 U.S. Dist. LEXIS 29537, at *24-25 (S.D.N.Y. Jan. 9, 2013) (dismissing hostile work environment claim because the conduct "did not include offensive language or physical contact" and was not "sufficiently pervasive"). Accordingly, Plaintiff's hostile work environment claim fails.

## III.   STATE AND CITY LAW CLAIMS

DOE has moved to dismiss Plaintiff's NYSHRL and NYCHRL claims, arguing that they are barred by New York Education Law § 3813(1), which requires a plaintiff bringing claims under these statutes to first file a written notice of claim within ninety days after the claim arises. N.Y. Educ. Law § 3813(1). Plaintiff does not dispute that she did not file a notice of claim. Accordingly, Plaintiff's NYSHRL and NYCHRL claims must be dismissed. E.g., Birkholz v. City of N.Y., No. 10 Civ. 4719 (NGG), 2012 WL 580522, at *15 (E.D.N.Y. Feb. 17, 2012) (failure to plead "that notice of the claim has been served" is grounds for dismissal).

## IV.   LEAVE TO AMEND

Fed. R. Civ. P. 15(a) provides that a plaintiff may amend her complaint "once as a matter of course before a responsive pleading is served." Otherwise, a plaintiff may do so only

with leave of court or consent of the adverse party, but "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). However, "'[w]here the proposed amended complaint would not withstand a motion to dismiss, the granting of leave to amend would be futile, and hence the motion [to amend] should be denied.'" Howard v. City of New York, No. 02 Civ. 1731 (KMK), 2006 WL 2597857, *8 (S.D.N.Y. Sept. 6, 2006) (quoting In re Winstar Commc'ns v. Rouhana, No. 01 Civ. 3014 (GBD), 2006 WL 473885, at *1 (S.D.N.Y. Feb.27, 2006)); see also Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

Because the Court cannot determine, at this stage of the proceedings, that any effort to amend would be futile, Plaintiff is granted leave to amend. Any motion to amend is to be filed by June 17, 2019. The proposed Second Amended Complaint is to be attached as an exhibit to the motion.

## CONCLUSION

For the reasons stated above, this Court granted in part and denied in part Defendant's motion to dismiss.

The parties are directed to appear before the Court for an initial pretrial conference in accordance with Rule 16 of the Federal Rules of Civil Procedure on **Thursday, June 13, 2019 at 10:15 a.m.** in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

The parties are further directed to confer prior to the conference regarding all of the subjects to be considered pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and to file a written report outlining their discovery plan pursuant to that Rule. The parties must also submit a joint letter addressing the following in separate paragraphs: (1) a brief description of the case, including the factual and legal bases for the claim(s) and defense(s); (2) any contemplated motions; and (3) the prospect for settlement. For the Court's convenience, the parties must set forth the conference's date and time in the joint letter's opening paragraph. The Court directs the parties to consult its Individual Practices and model Case Management Plan and Scheduling Order, both of which are available on the Court's web site. The written report outlining discovery and the joint letter must be filed at least three days prior to the initial pretrial conference with the Court. The parties shall send courtesy copies of that report and joint letter to the United States Courthouse, Chambers 2204, 40 Foley Square, New York, New York 10007.

The Pro Se Office is a valuable resource in assisting litigants who proceed in federal court without the assistance of counsel. The Pro Se Office may be reached at:

29

Pro Se Clerk's Office
Southern District of New York
40 Foley Square
New York, NY 10007
(212) 805-0175

The Clerk of Court is directed to mail a copy of this memorandum opinion &

order and this Court's March 31, 2019 order (Dkt. No. 26) to pro se Plaintiff Jeannine Renee

Lam, 4125 50th Street, Apt. 5B, Woodside, NY 11377.

Dated: New York, New York
May 29, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge