UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jeannine Renee Lam

_____

Write the full name of each plaintiff.

18 CV 2756
_____

(Include case number if one has been assigned)

-against-

New York City Department of Education-NYCDOE

Do you want a jury trial?

☒ Yes     ☐ No

_____

_____

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

## SECOND AMENDED

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7-12-19



2019 JUL 12 AM II: 12

SDNY PRO SE OFFICE
RECEIVED

Rev. 3/24/17

## I.   PARTIES

### A.   Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Jeannine | R | Lam |
|---|---|---|
| First Name | Middle Initial | Last Name |

4125 50th Street, Apartment 5B

Street Address

Woodside

| County, City | State | Zip Code |
|---|---|---|

jlam2@schools.nyc.gov

Telephone Number                    Email Address (if available)

### B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:   New York City Department of Education

Name

Tweed Court House - 52 Chambers Street

Address where defendant may be served

| New York | NY | 10007 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

Name

Address where defendant may be served

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| | |
|---|---|
| Name | |

Address where defendant may be served

| County, City | State | Zip Code |
|---|---|---|

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

**District 30**

Name

Address

**Queens**                              **NY**

| County, City | State | Zip Code |
|---|---|---|

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐   race: _____

☐   color: _____

☐   religion: _____

☐   sex: _____

☐   national origin: _____

Page 3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☒ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year:  **1974** _____

☒ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is:  PTSD, Manic Depression, Anxiety, Depression

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is:  PTSD, Manic Depression, Anxiety, Depression

☒ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

Page 4

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☒ did not hire me

- ☐ terminated my employment

- ☒ did not promote me

- ☒ did not accommodate my disability

- ☒ provided me with terms and conditions of employment different from those of similar employees

- ☒ retaliated against me

- ☒ harassed me or created a hostile work environment

- ☒ other (specify): long-term effect on future employment at NYCDOE and other agencies, attempted to terminate my employment

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

See attached details within the complaints, please.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

⊠   Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   1/10/2017, 6/11/17

☐   No

Have you received a Notice of Right to Sue from the EEOC?

⊠   Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   12/29/17

When did you receive the Notice?   1/7/18

☐   No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

⊠   direct the defendant to hire me

⊠   direct the defendant to re-employ me

⊠   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

⊠   direct the defendant to reasonably accommodate my disability

⊠   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

See attached for demands and stipulations within the complaints, please.

Page 6

## VII.  PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| July 12, 2019 | | |
| --- | --- | --- |
| Dated | Plaintiff's Signature | |
| Jeannine | R | Lam |
| First Name | Middle Initial | Last Name |
| 4125 50th Street Apartment 5B | | |
| Street Address | | |
| Woodside | NY | 11377 |
| County, City | State | Zip Code |
| (646)884-3055 | jlam2@schools.nyc.gov | |
| Telephone Number | Email Address (if available) | |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☒ No

    If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Factual Addendum to 2nd Amended Federal Complaint for Jeannine Lam
    18 CV 2756 (SDNY)

2001

1. In 2001, I was hired by the New York City Department of Education (NYCDOE) as a Special Education Teacher.

2011

2. In 2011, I was assigned as the Magnet School Coordinator at PS 87, mainly in charge of recording and documenting activities, assigned to a storage closet as an office for the two years in the position, quite humiliating.

2013

3. From September, 2013 until Mid-May, 2015, I taught a Special Education ICT class. One Special Education student in my class, presented severe and pervasive behavior reflecting the experience of severe trauma. Their trauma was regular and pervasive, presenting as incessant and relentless screaming, crying and yelling. Continuously, I had to face this scenario, and, as a result, became traumatized from being forced to share in their trauma, but not having the ability to help. Although I had not been physically hurt by this student, his behavior was extremely damaging to my psychological, emotional and psychiatric state over time, so pervasive that it altered the conditions of my employment and created an emotionally-abusive classroom environment for staff and students involved. The student was not offered the appropriate behavior therapy or any other assistance, later given a voucher for private school. Complaints began to roll in to Chancellor Farina from parents, and the principal passed on her concern to me. I regularly sat beside him, suffered, and, though an accident report was never submitted, I was diagnosed for the first time with Post Traumatic Stress Disorder (PTSD) as a result of work-related stress, as per my psychologist.

2014

4. On January 17, 2014, I was rated Effective for an informal observation at PS 87.

5. In May of 2014, I became a target and felt threatened by PS 87 Principal Berry who said, on several occasions, that if I stayed at PS 87, I would regularly need union protection due to the complaints made against me. After PS 87 Principal Berry verbally reprimanded me about recording, falsely investigated me for accusations of neglect made by a para-professional, I felt uncomfortable, humiliated, and threatened about my future at PS 87, on top of the severe abuse and trauma experienced within my classroom.  I was told that colleagues continually complained about the screaming, and this caused great animus within my section of the school. My anxiety escalated to the diagnosis of Post-Traumatic Stress Disorder. Eventually, I felt I had to heed her threats and transfer to avoid an increasingly hostile work environment for I was promised that the conditions would be pervasive upon my return. I plead that my diagnosis of PTSD came about as a direct result of the continuous and pervasive trauma I experienced working with this emotionally disturbed student due to the NYCDOE's neglect in providing the appropriate treatment they needed. The inaction of the NYCDOE forced me into a role of behavior therapist, which I was not trained for and, as a result, I suffered a work environment laden with trauma, and the embarrassment associated

with daily humiliation from colleagues and supervisors for not being able to manage this child rather than seeking appropriate treatment for them.

6. On May 13, 2014, I had an anxiety attack. PS 87 Principal Berry escorted me to the school's exit and told me to take time off without guidance on how to do so (i.e. Chancellor's Regulation C-603). I followed her directions to leave. I have not returned to PS 87. Even though I emailed doctors' excuses for my absences, not one absence was entered into the NYCDOE database between May 13, 2014 to June 28, 2014. I plead that PS 87 Principal Berry was hiding what was going on: the intimidation and expressed, severe animosity and the abuse I had been enduring. With information and belief, she figured it would best be hidden by keeping me on payroll and in attendance to hide that I had developed PTSD from the traumatic environment within my assignment, and that the student's Special Education Services had been severed. For over one month, her daily neglect to enter my non-attendance altered the conditions of my employment because another principal, upon information given, believed that I was either dishonest and untrustworthy, or I was insane because my attendance was perfect. Attempts to have my absences inputted have been ignored.

7. On August 7, 2014, the day before the Open Market transfer period closed, I accepted an offer by telephone from IS 204 Principal Leimsider without visiting. I explained that I didn't sign my annual rating sheet, or time cards, after being out sick for over a month at the end of the year.

8. For 2014- 2015, my teacher program at IS 204 was unreasonable, inhumane and unmanageable, compared with other teachers' schedules. I expected to receive support in my transition from elementary to middle school, but none was provided. In shock, my anxiety escalated to a palpable level, as seen in my work-style interactions. Against the contract, I was assigned five separate ICT classes in four separate locations throughout the building. Within each class, there were 12 Special Education Students, or the equivalent of 40% of each class, and a total of 60 Special Education students for which I was responsible for in all, as well as the General Education Students. I had to also teach three separate grade levels and science curriculums to which I was not familiar with, nor given resources for. Out of 4 Science-content area co-teachers that I taught 5 separate classes with, one had chronic attendance issues and then took a medical leave and retired. When I requested help, which I did regularly, there was no response, and I was forced to take on the role of both Special Education and General Education Teacher for his class in retaliation. It was insulting not to be seen as someone who could even be responded back to in an email. It felt like ridicule, and altered my daily work conditions as I was discriminated against and regularly neglected, continually affecting my emotional stability. I plead that IS 204 Principal Leimsider neglected to hire a full-time Science-content area teacher to replace Mr. Fedadu Hagos, therefore increasing my pedagogical duties to an unmanageable level. I plead that IS 204 Principal Leimsider failed to attempt to gain an appropriate substitute capable of taking on his role. Instead, she assigned random inhouse, unpaid, "emergency" coverages for teachers from all different subject-areas. Lack of support to mitigate this situation exacerbated my anxiety and mental health symptoms to a level easily seen by any layperson. Despite its negative impact upon my health, I attempted to deal the horrible conditions

expectations with, unable to perform at my best. Seeking the union only escalated the situation. Later, a parent's complaint that the school didn't fill the licensed science teacher's vacant position led to discipline against me, using me as a scapegoat instead of accepting that their own neglect had made even students the victims within the awful conditions. I plead that fulfilling the science area license requirements was a job responsibility added to further hostility and add to the heavy weight of my responsibilities. I plead that administration withheld the appropriate materials needed, such as paper and pencils, and basic access to the curriculum. Special Education funds were not used, withheld for the Special Education Program I was assigned.

9. On September 2, 2014, I asked IS 204 Principal Leimsider if I could attend a workshop run by approved NYCDOE vendors, five months in advance, and followed-up via email at 3:23 pm. There was no response. At other schools and at IS 204, I was never trained to make a "formal request"; an email message, conversation, or letter to ask for days off had been sufficient and I had never been directed before to do anything other. I was never handed forms to fill out. A 3020a-charge against me, in an attempt to fire me, was how she later punished and retaliated against me when I took these days, under medical suggestion to do so, despite her non-approval/non-denial, a clear practice of non-progressive discipline. I plead that Principal Leimsider intentionally ignored my requests, and the majority of my requests to follow while at IS 204. I plead that this management made a concerted effort to consistently use the strategy of "planned ignoring" to increase my job responsibilities, keep me from getting the necessary training that I needed, and place me within an environment based in neglect for expressed needs to keep my mental and physical health stable. IS 204 Principal Leimsider set a precedent to discriminate against me which carried over to rest of IS 204 and District 30 administrators. I plead that, once IS 204's suspicions of wrongdoing began, she began retaliation tactics, doing whatever she could to intentionally build my file in a negative light to tarnish my reputation. I plead that her successors, within IS 204 and other District 30 schools, stood by her in solidarity so as to maintain a unified front in the District 30 Administration and Supervision Department.

10. On September 8, 2014, I approached Principal Leimsider and AP Lazerson in person. She said that she would see if it would be approved. I followed up by email at 5:00 pm with an attachment about the program. There was no response. This lack of response, which occurred on a regular basis towards me, was her way to discriminate, humiliate and insult me as a professional by frequently disregarding me altogether

11. On September 18, 2014, I was notified, with a tone of annoyance to express her animosity, by IS 204 Assistant Principal Purdy that I had missed the deadline to participate in UA, an optional, non-essential, science program which I was medically unable to participate in, outside of the hours and off NYCDOE premises.

12. On October 1, 2014, IS 204 Principal Leimsider falsified my Annual Professional Performance Review (APPR), putting herself as evaluator, school as IS 204 Oliver W. Holmes/ 30Q204, rating as "N/A", recording, printing, and signing it. I plead that these actions were unauthorized and go against NYCDOE rules and regulations. PS 87 Principal Berry neglected to enter her own name and school as PS 87/ 2M087 or providing a performance rating me of "Effective" or "Highly Effective" using the "Effective" informal

observation I had received. I demand that this annual review be invalidated. With information and belief, because of the fact that my sick days were not recorded, I plead that IS 204 Principal Leimsider assumed that I was lying to her about sick days, or that I was mentally incapable because my statements were so contrasting to the evidence.

13. On October 7, 2014, I was informally observed by Assistant Principal Purdy. The evaluation overlapped with my colleague's evaluation, and was performed in retaliation, thus violating the contract, and therefore invalid. I demand for this rating be invalidated.

14. Following this October 7, 2014 evaluation, I asked IS 204 Administration and Supervision for support. I plead that my requests were intentionally ignored or left unanswered, therefore insulting my professionalism. I plead that financial resources intended for the Special Education Department were being used illegally, not provided for the Special Education aspect of my 3-tiered Science program with 5 classes.

15. On October 14, 2014, a neighboring Special Education Teacher gave me a list which showed I was required to complete a bulletin board despite that IS 204 Assistant Principal Purdy had informed me that I was not assigned one at all.

16. On October 16, 2014, Principal Leimsider brought the "Annual Professional Performance Review (APPR)" for me to sign. The reason behind a final rating of "N/A" is unclear since it was had not been completed by PS 87 Principal Berry.  A key component, Measures of Teacher Practice was not filled in by even though I had been informally observed and received an "Effective" rating. The score for State Measures was an "Effective", and for Local Measures a "Highly Effective" rating. My performance was inadequately represented because of missing data. I plead that IS 204 Principal Leimsider had me sign without contacting the previous principal to complete her duties as a way to abuse her power so as to intimidate me.  Doing so has altered the conditions of my employment because, by adding an incomplete document to the system with a rating of "N/A", I am judged in a negative light as not completing own duties as a teacher to get a rating, and confusing interviewers as to why my resume says I was at one school yet this document states I was at another, further deducing my perception of trustworthiness. I demand that this version of my APPR Annual Review be removed and replaced with an evaluation reflecting an appropriate rating based on my actual performance.

17. On October 17, 2014, I was given an unwarranted letter to complete a bulletin board by IS 204 Assistant Principal Carroll as a way to intimidate me, because although there had been two meetings and I had never been assigned a bulletin board at all, I was penalized for their lack of communication.

18. On October 22, 2014, at 6:41 pm, I complained of a lack of time and space for students to test according to IEP mandates. I plead that my attempts to advocate for Special Education Students' IEPs, a protected class, created further hostility. Laws related to IEPs were being violated. This is an example of the retaliation taken against me for being a whistleblower: NY Labor Law 215, NY Education Law 3028-d. Due to my attempts to advocate for students' Special Education Rights, in this example and many to follow, marked increase in pressure and negative acts followed.

19. On October 24, 2014 at 6:36 am, I emailed AP Purdy regarding SE modifications for MOSL completion for students with IEPs and scheduling conflicts. No response.

20. On October 28, 2014, I attempted to contact AP Lazerson. There was no response.

21. On November 10, 2014, AP Purdy requested lesson plans. I plead that this act was in retaliation for perceived misdoings, an act to illustrate that there would be consequences for advocacy and when I spoke up for myself by adding criticism and job responsibilities. Asking for a week of lesson plans violates the contract.

22. On November 17, 2014, I emailed AP Purdy and Ms. Korber, lead science teacher, at 3:37 am, 6:21 am, and 6:20 am. I plead that I was hypervigilant and, despite my attempts to gain support and accommodation, there was consistently "no response" and I plead that this strategy to ignore me became continually intimidating and intentionally neglectful of my needs by withholding of the support I needed. I lost skills, and interpersonal relationships as this precedent was set by supervision.

23. On November 19, 2014, a parent came to see me at Parent Teacher Conferences, complaining there was not a lead science teacher, and that her child was receiving a sub-par education within the ICT class. I spoke to her about how his program was being covered by various teachers and suggested to speak with the principal to see if they could get a new science teacher. Laws related to compliance for services for Special Education Students were being violated. Hostility, intimidation and ridicule followed.

24. On November 20, 2014, a "Teacher Feedback Form" from Ms. Purdy was in my mailbox at 8:00 am, intended to increase job criticism and responsibilities.

25. On November 21, 2014, I requested materials from Carol at 8:13 am. No response.

26. On November 24, December 4, December 8, and December 9, 2014, I took sick days to seek medical help. I plead that the need for sick days was directly correlated with the hostility and lack of support at work which exacerbated my PTSD symptoms due to the conditions of a psychologically abusive workplace.

27. On December 18, 2014, I was informally observed. Ineffective (3 domains), Developing (2 domains), Effective (1 domain), N/A (2 domains). The lead teacher was ill. I plead IS 204 Assistant Principal Purdy knew of this illness, intentionally observing me under in retaliation to easily be able to ridicule and increase criticism of me with poor ratings.

28. On December 22, 2014, I contacted Assistant Principal Carroll and Luis, a technology intern, to repair the laptop that they had provided. No response. Teaching requires technology to access what's need and present. My evaluations were negative as a result of a nonresponsive precedent. A laptop is essential for a teacher, just like a vehicle for a driver. I didn't ask for the best laptop or whiteboard, just one that worked. I was denied the basics to prepare and collaborate with colleagues at work via technology.

2015

29. On January 8, 2015 at 9:30 am, a parent called to question administration about the science teacher's absences and plan to remedy the situation.

30. On January 8, 2015 at 11:20 am, IS 204 Assistant Principal Purdy called to intimidate me by demanding lessons from Monday to Wednesday be brought to her office at 2:15 pm. Denied of my contractual Weingarten Rights, being lied to that it was an "instructional" meeting and humiliated when it was not, I arrived at 2:15 pm where IS 203 Assistant Principal Purdy and Assistant Principal Lazerson reprimanded me about a phone call that they received from a parent about the lead teacher's absences. I suffered humiliating disciplinary actions against me which altered the conditions of my employment because they neglected to hire a lead teacher replacement and they were trying to intimidate

me cause I expressed to a parent a need for help: an increase in non-essential tasks, an unwarranted letter to file, push-in observations of other teachers, "coaching" meetings, decrease of co-teacher preparation time, etc. I plead that not progressive discipline, but an attempt to fabricate evidence by having write-ups from several administrators to use against me to support a 3020a-hearing to strengthen an argument to terminate me. During the 3020a hearing, that fact was highlighted as true to make it seem issues were ongoing and pervasive, but their lack of response was what was severe and pervasive.

31. On January 8, 2015 at 11:16 pm, I requested that administration stop assigning me unpaid, "emergency" coverages which violated the contract and were used as intimidation inequitably as a non-progressive disciplinary strategy. It was an added job duty and decreased my ability to perform within my essential job duties.

32. On January 9, 2015, an unwarranted letter to file followed an illegal "instructional" meeting which was intentionally set to bring me to a non-progressive disciplinary meeting without union representation in an act of discriminatory intimidation to make it clear that administration could do whatever they pleased to ridicule me by taking away my contractual rights.

33. On January 14, 2015, I emailed Carol for supplies again. No response.

34. On January 15, 2015, I took a sick day to speak with my doctor to confirm medical clearance for travel. He agreed that it would be beneficial to my mental health.

35. On January 16, 2015 at 6:14 am, 7:36 pm, and on January 17, 2015 at 2:41 am, I wrote questions about grades to Principal Leimsider and Ms. Korber. A lack of response was insulting and increased my anxiety.

36. On January 20 - 23, 2015, I went on an NYCDOE-vendor workshop. I had planned it as a strategy to deal with work-related anxiety, but my requests to do so yielded no response. I had been neglected as a disciplinary action throughout the year so far and felt helpless. I took them off as sick days leading to an SCI investigation, an unwarranted letter to file, a 3020a-hearing, fines, and demotion to ATR status.

37. On January 25, 2015, I wrote to AP Lazerson re: Carol's email address since she has ignored requests for materials. No response.

38. On January 28, 2015 at 5:10 pm, I emailed the doctor's note to Principal Leimsider as requested even though it had been faxed over from the doctor's office.

39. On January 28, 2015 at 5:14 pm, I asked Principal Leimsider re: supplies. No response.

40. On January 28, 2015 at 7:38 pm, I wrote to Principal Leimsider, AP Lazerson, and AP Purdy to request a functional computer. No response.

41. On January 28, 2015 for two periods, I observed teachers since administration made me do as an altered condition of my employment, ridiculing and insulting my seniority as a Special Education Teacher, and minimizing my time to plan with my co-teachers.

42. On January 28, 2015 at 6:47 pm, I wrote to follow-up after a letter to file about expectations set forth within. There was a continuous, concerted effort to ignore me.

43. On January 29, 2015, at 6:36 am, I wrote to Principal Leimsider because I couldn't get ink to print worksheets for lessons. I had not received the resources needed to teach.

44. On January 29, 2015, upon arrival to school, Secretary Pamela called me. IS 204 Principal Leimsider ordered me out into the hallway to intimidate, ridicule, and humiliate me,

saying that it was not necessary to write to her to get supplies I needed, but a continuous pattern of neglect had proved otherwise.

45. On February 2, 2015, I took a sick day to treat the anxiety caused by a hostile work environment and the lack of support at work which exacerbated my PTSD symptoms.

46. On February 3, 2015, I took a sick day to treat the anxiety caused by a hostile work environment and the lack of support at work which exacerbated my PTSD symptoms.

47. On February 4, 2015, SCI investigator's notes about me state: "Former school never absent never a problem stated with this school." The attempt to terminate me was not progressive discipline, but rather the use of discriminatory intimidation against me to abuse their power and ridicule me for my wrong-doings. I had had no documented history of the misuse of days.

48. On February 10, 2015, I called about disruptive students during test practice. No response was undermined to my role as a teacher to have consequences within class.

49. On February 11, 2015 at 4:17 am, I wrote to admin. about same issue. No response.

50. On February 23, 2015 at 6:15 pm, I wrote to admin. to follow-up about January 28, 2015 message re: observation, and the letter to file. No response.

51. On February 27, 2015, I took a sick day to treat the anxiety caused by a hostile work environment and the lack of support at work which exacerbated my PTSD symptoms.

52. On March 2, 2015, SCI sent a subpoena to ASK Productions, Ariel and Shya Kane, which lead to the termination of my relationship with this organization and its members.

53. On March 2, 2015 at 2:59 pm, I emailed Carol for supplies. No response.

54. On March 3, 2015 at 12:45 pm, Principal Leimsider sent me to speak with investigators.

55. On March 3, 2015 at 1:30 pm, I met with AP Purdy regarding the lack of a lead teacher, lack of co-planning time, TIP plan, feelings of being targeted, having too much pressure on me, and not being able to handle caseload.

56. On March 3, 2015, I called office about insubordinate students. No response.

57. On March 5, 2015 at 6:46 am, I emailed dean for upcoming trip. No response.

58. On March 6, 2015, I called office about insubordinate students. No response.

59. On March 6, 2015 at 9:22 am, I emailed dean for upcoming trip. No response.

60. On March 8, 2015, as a result of not having the time or resources I needed at work, I attempted to plan at home, but was unable to function in major areas of my life.

61. On March 9, 2015, I wrote to AP Purdy, Ms. Goldberg, and Ms. Korber about the upcoming trip concerns and students' behavior. No response.

62. On March 9, 2015, I received an intimidating, unwarranted letter to file for the sum of my sick days, to date, which were used to mitigate my mental health symptoms. This was discriminatory intimidation used to out-rightly punish me for my mental health symptoms, ridiculing me for taking days off to treat my symptoms stemming from a disability the NYCDOE was made aware of. I had not navigated strategies on how to cope, especially when dealing with the exacerbating factors at IS 204. My disabling symptoms were used against me to bring me up on 3020a-charges. The contract was violated as this unwarranted letter was placed in my file without a disciplinary hearing and UFT Representation.

63. On March 10, 2015 at 7:08 am, I requested ink from Carol for the printer. No response.

64. On March 11, 2015 at 7:05 am, I sent messages to AP Carroll (cc: AP Purdy, Ms. Goldberg, Ms. Korber) to ensure enough teachers went on the trip. No response.

65. On March 11, 2015 at 4:28 am, 7:08 am, 8:50 am and 10:12 am, an email correspondence took place regarding the handing of IEPs where I had given IEPs to the counselor, who was charged with passing them on to an IEP teacher, but he had not done so. The relationship between AP Carroll and the IEP teacher was a violation of the Conflicts of Interest Board of the City of New York and disproportionately affected the weight of my schedule due to the favoritism which took place. Also, NYC Charter 2604, Letter B, #14 for Chapter 68, Conflicts of Interest, DOE Anti-nepotism Rule #2, Regulation of the Chancellor C-110.

66. On March 11, 2015, I emailed AP Carroll, Carol, and AP Lazerson to request a working laptop. A computer was a necessary resource to do my job, but I was not provided with one that worked. It was humiliating to ask over and over for help and get no support.

67. On March 11, 2015 at 12:45 pm, AP Lazerson called my room and demanded that I submit IEP progress reports by 2:20 pm. It was humiliating that when I reached out for help, no one responded to me, but discriminatory intimidation was used to express animosity and abuse power in disparaging ways.

68. On March 12, 2015, I returned two non-working laptops. Administration knew that I had returned these computers and requested repair several times, to no avail.

69. On March 12, 2015, I was observed by AP Purdy. The lead teacher had not been replaced, the mandated 1-1 behavioral para-professional was absent, the computer and whiteboard were broken, etc. AP Purdy was provided with the "Entrance Ticket", Mini-lesson, leveled worksheet, and exit ticket as my lesson plan, which she completely ignored. All domains were rated as "Ineffective".

70. On March 12, 2015 at 10:18 am, I emailed IS 204 Assistant Principal Purdy to request a post-observation conference. No response.

71. On March 12, 2015 at 10:21 am, I wrote to administration to ask that Chancellor A-670 be followed for a March 18, 2015 trip which states: "Special Education Students- for school trips involving Special Education students, the ratio of staff to students should be at least the same as the ratio mandated to their classes." We required 4 teachers in all. I was involuntarily assigned to plan this trip to add to my duties. I plead that the administration intentionally did not respond to my communication to create an environment which was neglectful of my emotional well-being and to escalate my anxiety. It was humiliating when there was a lack of response and this regulation was violated and I had no control over how it was handled.

72. On March 12, 2015 at 12:32 pm, I looked for IS 204 AP Purdy in good faith to give her my lesson plans and documents as support to my observation, but she refused to take them and reprimanded me, "You've got to run upstairs!" Her discriminatory intimidation was ridiculing and reflected her animosity against me.

73. On March 13, 2015, I broke down my schedule to look at how to manage my 5 classes. Materials were lacking, lessons were not provided by co-teachers despite incessant begging, and I found myself planning all of my non-DOE hours to keep above water. The administration had no regard for my mental well-being.

74. On March 13, 2015 at 12:00, I made a request for Advance training. No response.

75. On March 13, 2015 at 7:20 pm, I made a request for a laptop. No response.

76. On March 17, 2015, Principal Leimsider, in an act of intimidation, where I taught without a lead teacher, spoke to one student about his hood, then left.

77. On March 17, 2015 at 11:04 am, I wrote to AP Purdy, Carroll and Lazerson. No response.

78. On March 17, 2015 at 11:15, my PTSD symptoms were heightened, emotionally distraught, disorganized, and alone. I was feeling hopeless about the conditions at work and the lack of response from everyone at school.

79. On March 17, 2015 at 11:20 am, IS 204 Principal Leimsider chose to make an anger-laden, humiliating school-wide announcement that I was late to a class being supervised by their lead teacher. IS 204 AP Purdy stated with contempt: "You need to leave lesson plans for tomorrow," in an intentional act of micro-management to add to my responsibilities.

80. On March 17, 2015 at 8:03 pm, I emailed AP Carroll, AP Purdy, and Goldberg about students who did not have permission slips filled out for the trip. No response.

81. On March 18, 2015 at 2:13 pm, I received an unwarranted disciplinary letter to file for lateness. My contractual rights were violated; I was not given 48 hours' notice to gain UFT Representation. IS 204 Principal Leimsider used a humiliating way of handling it, using a school-wide announcement, rather than choose a less humiliating one.

82. On March 18, 2015, two ICT classes attended the Seeds to Trees trip with only 3 teachers. One class hiked while the other did group activities. As a result of neglect, I felt pressured to be on high alert, unable to take break to use the restroom from 8:15 am to 2:13 pm while supervising students. Then, still without a break, I was disciplined immediately after. I felt continually hounded and terrorized. The contract and the Department of Labor, Division of Labor Standards, Section 162, Guidelines for meal Periods" were violated.

83. On March 18, 2015 at 6:18 pm, I requested a laptop. No response. I continued to attempt to teach without this resource and preparation cut well into my personal life since my work schedule was full of added duties and responsibilities.

84. On March 20, 2015 at 12:45 pm, IS 204 AP Purdy was outside my In-House Suspension Room assignment and gestured to follow her. I told her I needed a break but she ignored and demanded that I go at that moment to sign my observation report. This was retaliatory as she wanted to witness me signing a poor evaluation while others state copies are put in a sealed envelope and signed at their convenience.

85. On March 20, 2015, Union Representative, Ms. Goldberg, wrote an APPR Complaint about the circumstances violated during my observation on March 12, 2015, rated "Ineffective" for most domains: 1a, 1e, 2a, 2d, 3b, 3c, 3d. Domain 4e was "N/A". IS 204 AP Purdy refused to accept lessons when approached in person. I plead IS 204 Principal Purdy was directed to rate me "Ineffective" to build up 3020a-charges. I demand that this observation be invalidated and destroyed.

86. On March 22, 2015, I wrote an email to IS 204 Principal Leimsider and staff to express the impact that the work and lack of support was having on my health. No response. Retaliation followed: an emergency planning meeting announced over the school PA, an Advance trainer showing up during my lunch without warning, other outside personnel

showing up unannounced. I felt terrorized by the vengeance against me. I plead that my email was a desperate cry for help and I was punished without intention of helping.

87. On March 24, 2015, first period, Principal Leimsider had new patrol, outside my room.

88. On March 24, 2015 at 12:00 pm after my APPR-Complaint, a para was finally provided.

89. On March 24, 2015 at 2:20 pm, IS 204 Principal Leimsider called my team to my room as an added duty, an emergency meeting with an outside specialist.

90. On March 25, 2015, I asked for desks. No response.

91. On March 25, 2015 at 7:45 am, Secretary Pamela gave me an unwarranted letter about an investigation of allegations of corporal punishment.

92. On March 25, 2015, without warning, for two periods, a trainer showed up, violating the contract, and laws re: taking away lunch, increasing my job duties without financial compensation. IS 204 Principal Leimsider's hostility had momentum impossible to stop. I was not able to function because of the actions. She intended to embarrass, humiliate and incapacitate me, a violation of the contract, Article 23, Special Complaints.

93. On March 26, 2015, I took a Restoration of Health Leave. I plead IS 204 Principal Leimsider's style of retaliation exacerbated my anxiety to an extent where I feared going to work because I knew that she would intimidate and ridicule me continuously. I plead that IS 204 Principal Leimsider had every intention of continuing to harass and build a case to terminate me as her goal before retirement that June.

94. On March 26, 2015, I got help to recover physically, psychologically, and emotionally. I was prescribed muscle relaxers on a regular basis 3X per day as a way to reset my body to handle the physical strain my PTSD symptoms had had upon my body. My psychiatrist prescribed Lamictal, traditionally used for seizures, to reduce my PTSD symptoms. I sought counseling to manage work through the events, as well as physical therapy, and chiropractic treatment.

95. On March 27, 2015 at 1:30 pm, false allegations of corporal punishment reported to OSI.

96. On April 1, 2015 at 4:00 pm, a USPS arrived with a Certified Return Receipt letter dated March 27, 2015 from IS 204 Principal Leimsider regarding allegations of corporal punishment stated "If you fail to appear to this rescheduled meeting, I will make my determination in your absence." I plead that this gave me an anxiety attack, witnessed by my two caretakers. I plead she did this to exacerbate my anxiety to make the tone clear that she would still retaliate while she was notified by SOLAS that I was on leave.

97. On April 28, 2015, IS 204 Principal Leimsider denied request for a tax-exempt form.

98. IS 204 Principal Leimsider interrupted my FMLA repeatedly sending letters to me via USPS Certified Return Receipt and emailing me to get me in for in-person meetings which I could not attend. She should have waited until I was back in the building. Her interruptions delayed my return. IS 204 Principal Leimsider threatened that she would take disciplinary action against me, using my disability complete illegal OSI and SCI investigations during my absence. Some dates on her letters: 5-1-2015 (immediately following SCI results being sent to Chancellor Farina), 5-3-2015, 5-12-2015, 5-13-2015, 5-15-2015, 5-16-2015, 5-19-2015, 5-23-2015, 5-25-2015, 5-26-2015, 5-27-2015, 6-3-15, 6-8-15, 6-9-15, 6-18-15. Due to persistent interruptions of my sick days, I was terrorized in my own home, showing her fervent desire to discriminate and force discharge or demotion pre-300 days of my EEOC Complaint.

99. An SCI findings letter is dated April 30, 2015. The SCI investigation was illegal, investigated only to retaliate for my perceived wrong-doings. It is not progressive discipline to attempt to terminate and make me ineligible to work for DOE-affiliated agencies.

100.     On May 13, 2015, I emailed Chancellor Farina to request "express, written permission" to leave home base while on leave. Approval nor denial was given.

101.     On May 15, 2015, and May 19, 2015, I told Principal Leimsider I could not attend while on sick leave, but she kept using intimidation to make is seem that I had to.

102.     On May 19, 2015 at 8:06 pm through June 9, 2015, there was email communication with Chancellor Farina's office to attempt to get mandated "Express, written permission" to travel to rest at my father's house but approval or denial was never given. I have been harmed by the lack of ability to seek solace with family due to the neglect of Chancellor Farina because it is against NYCDOE Regulations to do so and would have been used against me in 3020a-charges and led to my termination. Ms. Haynes wrote that I could not get a waiver until the leave was approved, which was in November of 2015, months after I had returned to work. I plead that the NYCDOE's lack of responses within an appropriate amount of time caused harm. I suffered again due to the NYCDOE's ability to have appropriate procedures in place with Chancellor's Regulations.

103.     On May 21, 2015, IS 204 Principal Leimsider initiated an OSI Case #15-02208X in a retaliatory act of false allegations.

104.     On June 18, 2015, IS 204 Principal Leimsider wrote an unwarranted letter to file.

105.     On June 3, 2015, to intimidate, Principal Leimsider stated, "If you do not appear for this rescheduled meeting, I will make my determination in your absence."

106.     On June 9, 2015, I told Principal Leimsider that I could not attend while on sick leave, but she kept intimidating me by wasting DOE-resources to make is seem I must.

107.     On June 18, 2015, a photograph sent by USPS letter by IS 204 while on leave.

108.     IS 204 Principal Leimsider retired in June of 2015, but there was just cause for disciplinary action against her because she suspiciously used a ton of sick days to deplete her CAR, a common precedent set at the NYCDOE, but this, somehow, didn't trigger an SCI-investigation by the superintendent or the NYCDOE Central Office like my days had triggered an investigation when I took days off to travel, also commonly overlooked in the NYCDOE, but IS 204 Principal Leimsider used discriminatory intimidation to not overlook it for me, instead ridiculing me so she had the psychological "upper hand", using this as a form of psychological warfare between us and create animosity. An SCI-investigation of her would have found conduct unbecoming of her position, neglect of duty, fraud, insubordination, conduct prejudicial to the good order, efficiency, or discipline of the service, substantial cause rendering her unfit to perform properly her obligations to the service, and just cause to terminate before she retired.

109.     I applied for Open Market positions, but a "problem-code" blocked my transfer, a modern-day blacklist or scarlet letter. I sent applications between July 28, 2015 through August 4, 2015 to many schools. No response.

110.     On August 5, 2015 at 5:23 pm, I contacted AP Lazerson. No response.

111. On August 11, 2015, I wrote AP Lazerson to follow-up about the need for an accommodation and a description of my job duties. No response.

112. On August 13, 2015 at 4:30pm, I contacted AP Lazerson. No response.

113. I made multiple accommodation requests, both verbal and written, to IS 204 Interim-Acting (IA) Principal Kotzer in hope that my recovery would be supported rather than suffer psychological abuse.

114. On August 16, 2015 at 2:42 pm, I contacted AP Carroll. No response.

115. On September 2, 2015 at 1:19 pm, I emailed AP Carroll. No response.

116. On September 3, 2015 at 9:40 am, I emailed IA Principal Kotzer to meet.

117. On September 4, 2015 at 2:25 pm, AP Carroll saw me and expressed his animosity to the new principal while I sat on a wooden bench for over 40 minutes.

118. On September 5, 2015 at 2:23 pm, I applied for the SETSS position listed as a vacancy, but there was no response due to the animosity from the previous admin.

119. On September 8, 2015 at 8:09 pm, I wrote to AP Purdy about keys. No response.

120. On September 9, 2015 at 12:35 pm, I requested a meeting with IS 204 IA Principal Kotzer regarding ADA Accommodation and General Education Students' effect on Special Education Students' needs within the ICT classroom.

121. On September 10, 2015 at 11:58 am, AP Purdy said: "You're like Mother Hen!"

122. On September 16, 2015, IA Principal Kotzer stated, "The assistant principals said you are doing a great job, working so hard..."

123. On September 16, 2015, I and an IPC meeting which was really a disciplinary meeting without proper notice or UFT Representation with the principal where my contractual rights were violated. I was given a Teacher Improvement Plan (TIP), but I was not given it improve my effectiveness or pedagogical performance as I had not been rated due to my leave. It was a punishment to submit weekly lesson plans and assignments for four subject areas in a format chosen for me, beyond my essential duties, an added job duty, and against the contract. My role was to adapt the lead teachers' plans for the students with IEPs, which required the lead teachers' lesson plans be submitted to me at least two weeks in advance, creating animosity and strain with my co-teachers. Administration did not place an expectation on the lead teachers to provide lesson plans, curriculum or unit maps to me.

124. On September 18, 2015 at 11:15 am, I told my concerns to IA Principal Kotzer.

125. On September 28, 2015, I emailed IS 204 Principal Kotzer for a digital chart she had required for me to fill out weekly for my "TIP" plan. No response.

126. On September 30, 2015 at 10:38 pm, I requested removal of two General Education students via the A-443 Discipline Code after complaints to deans on 9-10, 9-11, 9-17, 9-18 of their severe interruption of Special Ed. Services. No response.

127. On September 30, 2015, I emailed IS 204 Principal Kotzer. Lead teachers' lesson plans were not provided despite my requests to fill out the lesson plan form required.

128. On September 30, 2015 at 1:50 pm, I reported students' verbal harassment, but I was reprimanded by administration, denying my rights to a non-abusive workplace.

129. On October 2, 2015, there was an accusation of Corporal Punishment.

130. On October 2, 2015, I asked IS 204 Principal Kotzer to remove a student who had made false allegations against me, but I was directed to not communicate with the student, demeaning my role as a teacher, and denying my rights to a safe workspace.

131. On October 5, 2015, I was told OSI Case 1507123X was closed without clarity of the results. I plead that this case was opened and initiated as a diversion when I attempted to grieve illegal investigations that took place the previous year.

132. On October 13, 2015, I asked to assist colleagues with grading, but was rejected by another teacher, reflecting growing animosity within the workplace.

133. On October 13, 2015, AP Purdy arranged a meeting with a student's parents who claimed that colleagues in the school observed me and negatively reported back to the parent, further building hostility at work to extend within the community members. This disparaging behavior was meant as ridicule and insult to my professional capacity.

134. On October 13, 2015, I requested attendance at a PD. No response.

135. On October 13, 2015 at 10:30 am, I set a meeting with IA Principal Kotzer.

136. On October 14, 2015, IA Principal Kotzer did not show up.

137. On October 18, 2015, she told me to schedule with Pamela. No response.

138. On October 23, 2015, three administrators, informally observed the lead science teacher and me for the same lesson but neglected collect my lesson plans. I was rated as "Developing" and "Ineffective" as a way to humiliate and increase their scrutiny by contrasting my ratings with the lead science teacher who got "Highly Effective" and "Effective" ratings as a reward for not providing the union representation I needed. Due to animus and neglect, evidence of "Highly Effective" and "Effective" performance was ignored for me, stating that changes have been made to other teachers' ratings but they refused to do so for me.

139. On October 26, 2015, I scheduled a meeting with Principal Kotzer. No show.

140. On October 26, 2015, I requested to observe "Highly Effective" teachers who chose "Option 3" during their IPC as intended by HEDI Program. No response.

141. On October 27, 2015 I requested to move two General Education students assigned to the ICT class to another class because their misbehavior was taking services away from Special Education Students. There were many instances of noncompliance and unfulfilled services for IEP students, violating Regulation Part 300.600 State Monitory and Enforcement, Regulation #7 for no para, O.T. My request was denied.

142. On October 30, 2015, I was served SCI Case finding #2015-0593 and a letter to file stating that it may lead to further disciplinary action, including charges under the Education Law, which may lead to my termination. I plead that Principal Kotzer inappropriately and unnecessarily used this letter to bring me up on 3020a-charges as non-progressive discipline.

143. On November 1, 2015, I wrote to meet about a pre- and post- observation.

144. On November 2, 2015, I wrote to request the reassignment of the student who was part of investigation to have them removed for their false allegations against me.

145. On November 2, 2015, I wrote IA Principal Kotzer to refer a student to a General Education Classroom with Counseling only with ELA SETSS. No response.

146. On November 4, 2015, I requested a PPT Meeting to discuss two students without IEPs from the ICT classroom. No response.

147.        On November 5, 2015, IA Principal Kotzer signed an SCI letter to dated 6-18-15.

148.        On November 6, 2015, I got a grievance denial that the SCI was conducted fairly since there were 3 attempts to schedule a meeting, but I was penalized for not having medical clearance to return to the NYCDOE and interrupted during FMLA leave.

149.        On November 13, 2015, I met to adjustment my rating but they were denied.

150.        On November 15, 2015, I asked IS 204 IA Principal Kotzer my Parent Teacher Conference assignment. No response. I was assigned to the gym, demoted to the task of signing parents in, removing my pedagogical responsibilities. This was a violation of my contractual rights and SE compliance mandates, as parents were unable to discuss their child with an IEP's progress toward their annual IEP goals with their SE teachers.

151.        On November 18, 2015, IS 204 Principal Kotzer participated in an act of non-progressive discipline by signing 3020a-charges to terminate me based on SCI findings that I misused four sick days. I had already received a disciplinary letter to file which sufficiently addressed these findings and I had had a perfect attendance record in the system. With a need to retaliate, the SCI charge was an excuse used as political leverage to gain power to follow-through on the animosity toward me to gain power in interpersonal relationships with IS 204 and District 30 Administrative Team.

152.        On November 29, 2015, I emailed co-teachers and administration regarding getting weekly lesson plans to modify accordingly for IEP Students. No response.

153.        On December 2, 2015, I got a removal letter and "reassignment" from my duties as well as an "OPI Problem Code" assigned to my name.

154.        On December 7, 2015 I was escorted to sit, left, and was further neglected day in and day out, through severe and pervasive "planned ignoring" which was psychologically abusive. I was not given any appropriate tasks to do to be of service to the NYCDOE, a complete waste of NYCDOE funding. I was placed in a solitary, mini-rubber room confinement on the first floor of IS 204 in a small, secluded office next to two empty offices until the end of the year. Assigned no work, there was no need to interact with colleagues so all of my work relationships were severed. This was the least distinguished role possible within a school. I was humiliated and punished on what should be a suspension where I could contribute to the productivity of the NYCDOE in some way. The NYCDOE supported the decision to keep me secluded while suspended, regarded as an inconvenience, worthless, and swept like dirt under a rug in an act intended to humiliate me, inhumanely treating me like a dog to stay in its crate.

2016

155.        On January 29, 2016, and March 14, 2016 I met about my rating with Principal Kotzer and she refused to make any adjustments despite my rigorous effort.

156.        On March 15, 2016, I called Human Resources and spoke with a Human Resources representative about a "problem-code" attached to my name.  Human Resources Supervisor, Jeannette confirmed that this was true. Due to this status, hours of time spent applying and interviewing for positions in other schools were wasted due to this block preventing a transfer.

157.        On March 16, 2016, the arbitrator Eugene Ginsberg at my 3020a hearing deposed Principal Kotzer about how she felt about welcoming me back to IS 204, probably because she was not involved in the investigation in the first place. She stated

that the main reason that she wanted to move me on was because of my anxiety, expressed without hesitation or filtering, her bias was explicit against my mental illness. Due to this, I suffered the added punishment of a demoted title of ATR, instead of getting a position back. The NYCDOE lawyer, aware of her bias, allowed to have the NYCDOE pursue placing me "in excess" rather than recommending my placement back at IS 204. As an ATR, future attempts to transfer into a permanent position have been unsuccessful as a result of my title which could have been avoided had Principal Kotzer been aware of her bias. It was clear that her awareness of my PMI caused retaliation, along with siding with administration to neglect my concerns by not responding to me, avoiding contact with me by refraining from giving me any job duties

158.    On May 17, 2016, I applied for a Medical Accommodation for permanent placement in an elementary classroom rather than being moved to numerous new work environments. My anxiety was escalating with worry during hours of each day sitting idle for months in an empty space all day alone, a very psychologically abusive decision.

159.    On April 21, 2016, Arbitrator Eugene S. Ginsberg filed his opinion that the only award was a fine of "One Thousand ($1,000) Dollars", directing the DOE to comply with all laws, rules, and agreements. Instead, the NYCDOE chose non-compliance, choosing to add an award and punish me by excessing me due to Principal Kotzer's statement of implicit bias against mental illness. Placement in the "ATR" was a demotion for the title oozes implicit bias in NYC press.

160.    On May 20, 2016, I submitted an Accommodation Request, including job duties of a Special Education Teacher. An official list was not provided by the NYCDOE.

161.    On May 31, 2016, I was sent a letter by email for first ATR assignment immediately after receipt of a Formal Accommodation Request.

162.    On June 14, 2016, Human Resources said that if I was not asked to fill out a document at my school that I didn't need to fill it out. This reflects the inconsistent training and misinformation about procedures on how to apply for sick time days off which led to unnecessary reprimand and punishment

163.    On June 23 through June 29, 2016, an Accommodation Unit email chain reflected a lack of attempt to accommodate through an interactive process when a staff member questioned a flat-out denial of my request, but was overruled by precedent to deny without any consideration of individual circumstances or appropriate solutions.

164.    On June 27, 2016, without warning, I had an FMLA emergency for my ill mother. I emailed Principal Kotzer. She demanded a telephone call, interrupting my FMLA, demanding I report to work stating I "should have learned from my previous mistakes". I was forced to leave my mom unsafe. My own anxiety was elevated. There was no reason to return to a solitary, mini-rubber room confinement with no job duties. This discriminatory intimidation was meant as ridicule and insult to my ability to learn and to humiliate me for a mistake prior to her role as principal. She referenced my previous perceived misdoings and violated FMLA Law 825.200 and Section 105 Prohibited Acts.

165.    On June 28, 2016, Principal Kotzer ordered me to do return to work. Unlike with other employees, calling in was not seen at its face value. Rather than wishing my mother well, she instigated me and further punished me, clearly discriminatory intimidation intended to ridicule. Through information and belief, she was trying to

build a case against me that I was insubordinate. I was audibly severely upset but she coldly insisted my return. I attempted to follow her command and suffered an anxiety attack due to the travel hardship, trauma of her insensitive phone call, hardship this caused with my mother's upset for leaving her without proper rehabilitation so my mother experienced additional pain and suffering. Principal Kotzer used this as a learning lesson and opportunity to verbally reprimand me.

166.     On June 29, 2016, I got a "C" rating on my APPR.

167.     On July 20, 2016, my Formal ADA Accommodation for a "permanent placement in an elementary classroom rather than being moved around to numerous new work environments" was denied: "Unfortunately, there is no way to guarantee an ATR's teaching schedule or that the schedule will remain the same daily." I was not an ATR. I was suspended at the time. I was made an ATR immediately following this request. Outright denial is a precedent set in the NYCDOE as an acceptable approach to the challenge of complying with Federal Laws about providing an interactive process.

168.     On July 27, 2016, I faxed my FMLA application to Principal Kotzer to approve, sign, and send to the appropriate department, but she made no response, reneging on her responsibility, an acceptable precedent set at the NYCDOE.

169.     In September of 2016, I moved from my mini-rubber room to the teachers' lounge as my assigned space for the remainder of my suspension.

170.     September 21, 2016, I contacted Principal Kotzer about the FMLA request. She continued to refused to process it in retaliation because she believed I had inappropriately taken off. I demand it is approved as FMLA.

171.     A list of ATR Rotation Assignments
   a.  September 21, 2016 30Q126
   b.  October 12, 2016 30Q 148
   c.  November 9, 2016 30Q085
   d.  December 8, 2016 30Q291
   e.  December 14, 2016 30Q002
   f.  January 17, 2017 30Q010
   g.  February 1, 2017 30Q069
   h.  August 30, 2017 30Q141
   i.  August 31, 2018 30Q141
   j.  September 1, 2017 30Q291
   k.  September 9, 2017 30Q085
   l.  September 20, 2017 30Q230
   m.  November 8, 2018 30Q141
   n.  November 9, 2018 30Q230

172.     On Sept 21, 2016 I was informed of a Thursday notification of my location the following Monday. For me, this was a cause for anxiety because it affected my mental state during my recovery without an interactive process for any accommodations. An outright denial has caused avoidable pain and suffering because I had negative reactions to unjust transfers and the discriminatory intimidation I received within these unstable, ever-changing environments.

173.     On September 26, 2016, I was placed in the Absent Teacher Reserve immediately after I filed an Accommodation Request because Principal Kotzer did not invite me back due to my anxiety. A "job description" of an "ATR", or "how the job is actually performed in practice". I could not understand through "intuition" how the job was "to be performed" or how it was different than my specialty as a Special Education teacher. The life of an ATR proved to be erratic, unpredictable, and ever-changing, challenging my mental state during my recovery from trauma. Principals received a "Reason for Assignment" as an "Interview" because of vacancies at their schools, but ATRs were not informed of such so there was no preparation for an interview like other candidates for same position had for their "Interview". As a result, the young, untenured, low salaried, non-disabled teachers were chosen over me due to principals' implicit bias. ATRs are perceived as a threat to the principals' status because they assume they had done something wrong and there was pressure to keep a unified front among principals in an act of respect toward and solidarity with their peers not hire me, but to continue to punish my wrong-doings. There are disincentives to hiring an ATR as we are "free" and if willing to accept ATRs, principals are freed up budget money otherwise used to cover substitutes, and used for "per session", further rewarding teachers. As far as ATRs earning per session, there is a disincentive to hire them because there is no guarantee of their stability. ATRs are not to be considered "reassigned", but "in excess". Use of the word "reassigned" refers to a teacher removed from their assignment pending an investigation in Chancellor's Regulation C-175: "Pedagogues who have been reassigned from their positions may not perform per session service." The assumption I fit into the same category has damaged and tarnished my character reputation.

174.     On September 28, 2016, at IS 126, I was not strong enough to open a poorly maintained, paint-laden staircase fire door. It caught me off-guard and my cervical spine was thrown further out of alignment as I have multi-level degenerative spine disease. I could barely carry my bag home and sought chiropractor care that afternoon.

175.     On September 28, 2016 at 4:50 pm, an email from ATR Unit to IS 126 Principal Angueira stated that I was sent for an "Interview". I was discriminated against because of his implicit bias, stating explicitly that I was not fit due to disabling symptoms of my mental illness and disabling back problems.

176.     On September 29, 2016 at 9:34 am, Principal Angueira sent an email to not have me assigned to his school and referenced Personal Health Information (PHI), including my diagnosis of PTSD and body spasms, stating that all of his programs involve "opening and closing doors" and that I was not "a fit for [his] Special Education vacancy", clearly discriminatory intimidation, ridicule and insult, severely altering the conditions of my employment in relation of the unit which rotates me as an ATR.

177.     On September 29, 2016 at 9:56 am, the ATR Unit responded back to IS 126 Principal Angueira to advise him that he should summon me for disciplinary conferences to address the issue and compile disciplinary letters against me to prevent future rotations at his school. The ATR Unit encouraged disciplining me for my disabling symptoms to affect my eligibility for vacancies in the future. In addition, compiling letters builds 3020a-charges and leads to discharge from the NYCDOE. The ATR Unit encouraged the use of discriminatory intimidation to severely alter the future conditions

of my employment, creating an abusive work environment for me. Following, for the remainder of my rotation at IS 126, Principal Angueira made me "wait in the teachers' lounge".

178.  On October 13, 2016, Principal Angueira filed a request for a Mandated Medical Evaluation (Education Law Section 2568) citing PMI.

179.  From November 11, 2016 through November 22, 2016 I was forced to wait on line to fill out a visitor's pass at PS85. Attempting to assert my rights within the NYCDOE and the UFT agreement, further discriminatory intimidation followed by continuing to force me to sign in each day to illustrate my demotion to a visitor.

180.  On November 22, 2016 at a~ 2:20 pm, I met with Principal Chang at PS 85 about concerns I had. About my symptoms, she stated: "if a teacher comes into a school and has a physical disability, we could see that we could make temporary accommodations…when it comes to something we can't put our fingers on, we don't have—we have to do exactly what the DOE doctor tells us to do, so until we get that, I don't know how to support you… the nature of coming in to a school like this… from day to day or period to period it may change." I asked for a solution to the dismissal procedures at the school which were jeopardizing to the students' safety because I didn't know any of the students' guardians and for a solution to the erratic schedule of moving from period to period to all ends of the school. She denied the existence of a vacancy after I told her about my anxiety and need for accommodations. She led me to a staff meeting in the auditorium about the school's safety plan and the staff handbook. Carrying over her annoyance, she hastily demanded the paperwork being reviewed from me, later laughing and stating how I didn't need it because I was not a part of her staff, reflecting how little respect or value she had for me in front of my colleagues, ridiculing and insulting me, this affected relationships with my colleagues.

181.  On November 29, 2016, PS 85 Principal Chang filed a request for me to have a Mandated Medical Evaluation (Section 2568), citing Personal Medical Information.

182.  On December 16, 2016, I wrote to Principal Goldman about my need for accommodations.

183.  On December 19, 2016, on my first day at PS 2, I went into the principal's office and there was

184.  another staff member who was told by Principal Goldman to read a Mandated Medical Evaluation letter with my PMI as a witness in front of me, then she required for me to sign in receipt. There was no need to have someone else read and/or watch me sign a confidential document I was already privy to it via email. Upon information and belief, this information was further freely exposed to other members of the PS 2 staff.

185.  On December 21, 2016, I attended the Mandated Medical Evaluation at NYCDOE Medical and was promptly deemed "FIT". I supplied a copy Principal Goldman.

186.  On January 9, 2017, I was denied permission to basic materials and resources to support teaching and learning, including, but not limited to, a laptop and whiteboard which was already set up and used daily in each of the school's classrooms, basic 21st Century Teaching resources that full-time NYCDOE employees should not be denied access to. Technology is necessary to maintain the attention of a generation with strong reliance on and need for in their everyday lives, and to withhold this resource is is to have

them unprepared for their futures which will rely completely upon skill sets for its use. The classic black board, chalk and eraser are not even present in today's classrooms any longer and are not sufficient because technology is necessary for the access of all teaching and learning materials, as well as the NYCDOE email, on a regular basis. It was clearly an adverse employment action to limit and severely diminish access to necessary technology that was a clear part of the procedure and routine in the school. Setting a precedent that ATRs are not permitted to use technology diminishes their title and alters their essential duties as a Professional Educator. It also eliminated my ability to develop a professional skillset and pedagogical effectiveness on par with my peers. I was barred from the necessary resources paid for by NYC, State, and federal tax dollars and therefore students are given an education not aligned with the 21st Century. Upon this experience, I reported the discrimination occurring to the UFT representative, noting that I was suing the NYCDOE under ADA/ EEOC claims. Under information and belief, this representative and other teachers carried on this information to the principal as it was not said in confidence or privacy.

2017

187.    On January 10, 2017 at about 2:21 pm, I asked to attend the SLT Meeting, a group of teachers, parents, and administrators. My request was denied. Other teachers were allowed to participate in this activity, but I was excluded.

188.    On January 10, 2017 at about 2:25, Principal Goldman sent me to a Kindergarten classroom after denying access to an SLT meeting. A teacher was in the main office when that happened and arrived about 10 minutes later to the classroom. She was ridiculing me about how I had become an ATR, harassing me with disparaging questions to ridicule and insult me about my position as an ATR, insinuating that I was less respected than a substitute. I voiced some annoyance and she later joined with two teachers, one who was not even there, to make false allegations against me, corroborating with the principal that I had interrupted work, even though no specific assignment was referenced at all, just to have me transferred out of the school, as the ATR Unit, upon information and belief, tells principals to do when they want an ATR or teacher out. There was an implicit bias against me that I had done something wrong to become an ATR and that because of this it was okay to ridicule, and insult me. This impacted the conditions of my employment as I was transferred, was unable to work because I needed a Restoration of health Leave, and I was rated Unsatisfactory for the year due to this unwarranted letter caused by ill-will against me for perceived wrong-doings. I got an unwarranted letter to my file. This was non-progressive discipline with an intent to damage and alter my working conditions.

189.    On January 11, 2017, EEOC was sent via Certified Return Receipt at 2:57 pm.

190.    On January 13, 2017 at about 12:00 pm, PS Principal Goldman called me to a disciplinary meeting with claims of insubordination and interruption of work. Without knowing my side of the events, she immediately disciplined me using verbal aggression and discriminatory intimidation, ridiculing me about things I had not done, showing animus toward me. Principal Goldman claimed I had interrupted assigned duties with colleagues and accused me of insubordination for disregarding her direction to work on a parent newsletter, which she had not done, nor did the teachers even mention a

newsletter. She attempted to humiliate me for something I had not even done wrong, siding with her staff, making me the culprit.

191.       On January 13, 2017 at about 12:20 pm, during this disciplinary meeting, I let PS 2 Principal Goldman know that I was audio recording her as well as that I had audio-recorded the meeting when the teacher was harassing me. As I was under heightened anxiety, it was the only way I would be able to have a non-emotionally charged memory of the event. Despite evidence of the teacher's behavior, Principal Goldman disregarded my claims of harassment. Principal Goldman did not ask questions prior to ridiculing and reprimanding me, falsely accusing me of being insubordinate for interrupting a task, which was not mentioned once by the two teachers at the meeting. She stated I was not a part of her permanent staff and chose to side with her permanent staff.

192.       On January 13, 2017 at about 12:40 pm, I requested to be relieved of my upcoming coverage of a Kindergarten class as an accommodation as being reprimanded during the disciplinary meeting heightened my anxiety symptoms. Instead of considering accommodating my request, she demanded for me to punch out and go home if I wasn't going to report to my assignment. Doing this to me was discriminatory intimidation meant to ridicule, and humiliate me in front of an office filled with staff. It was spiteful and malicious. Out of fear of further accusations of insubordination, and retaliation, I promptly reported to my assigned location and neglected my own anxiety. I plead that, in addition to the verbal discipline, an unwarranted letter was placed in my file. I demand that this letter to be removed from my file permanently.

193.       On January 17, 2017, I put in a leave because of my PTSD symptoms and the altered conditions of my employment, and psychologically abusive work environment.

194.       On January 18, 2017, I put in for Intermittent FMLA to care for my mentally ill mother as health proxy. I received multiple calls a day about her issues.

195.       On January 18, 2017, I received an email from the ATR Unit. I was told to report to a new school the next day. This was due to PS 2 Principal Goldman's disciplinary actions. As mentioned previously, the ATR Assignment Unit, including correspondence with William Fahey and Genevieve Lamonaca, NYCDOE ATR Unit workers, had advised another administrator, Principal Angueira, that he should summon me for disciplinary conferences to address issues and then to gain disciplinary letters so as to be able to prevent future assignments at his school. I plead that she wrote me up two times with the sole intention of having me removed from her school and to never have me assigned there again. I plead that the NYCDOE ATR Unit instructs principals to write teachers up as the best strategy to have them removed. I received an email message on a Tuesday night for a change in assignment the following day. Usually, assignment changes were on a Thursday for the following Monday. I plead that IS 204 Principal Goldman's only intention for writing me up was as retaliation so that she could transfer me and keep me out of her school. I plead that my unexpected ATR rotation change increased my anxiety level and I needed a Restoration of Health Leave of Absence.

196.       On January 18, 2017 until January 27, 2017, I took a Restoration of Health Leave of Absence to recover. My FMLA was interrupted several times with email messages from PS 2 Principal Goldman. Rather than waiting until my FMLA ended and I returned to service, she continued to contact me regarding disciplinary meeting times.

197.     On February 3, 2017, I returned for duty after a Restoration of Health Leave. Due to persistent interruptions while out sick, at the end of my first day back to work, a disciplinary conference was already arranged for that afternoon. I had an added commute to go to PS 2 from PS 69 to attend this disciplinary conference. Within a short time after, a disciplinary letter was immediately sent via email, claiming that I had violated Chancellor's Regulation A-820: Confidentiality and Release of Student Records; Records Retention. Principal Goldman violated the application of this regulation. This accusation was false. In my role as an ATR, I had not been given any confidential records that I would have been able to share. PS 2 Principal Goldman had intentionally fabricated these allegations against me to get me out of her school and, even without ample evidence to validate her claim, she was successful in doing so. It proved effective as this is the precedent set within the NYCDOE: target teachers who do not keep the status quo. I had not been given UFT support. The UFT representative would not represent me so I had to represent myself. My notes have been included as a PDF of how I represented myself. I plead that this letter was given only as retaliation and to prevent future placement in PS 2. I demand that this letter be removed permanently from my file. This was not progressive discipline as her intent was to harm my career.

198.     Although from September of 2016 through June of 2017 all of my evaluations were rated as Satisfactory by Field Supervisor Black, I got a U-Rating for the year. PS 2 Principal Goldman's feelings of spite, animus, and hostility were left in the form of two letters to file. I had been targeted because I had spoken up about my need for advocating for myself and need to get the accommodations I needed in the workplace. Even though she was aware of my previous attempts and denials of Medical Accommodations, she intentionally refused to accommodate a basic request to have access to the classroom computer and whiteboard to teach with. My initiation of seeking UFT support was immediately retaliated against, especially when she became aware of my connection with prominent union activist, Francesco Portelos, another ATR whose initial charges were directly because of one question that he had about his school's budget during an SLT meeting. I suspect there was something behind those SLT meeting doors which she was attempting to hide and my bringing attention even to the existence of SLT was highly disturbing to her.

199.     On June 15, 2017, my annual performance rating for the 2016-2017 School Year was signed by Retired Principal Esther Salorio, whom I have never meet. I plead that a rating given by someone I never met is grounds enough to invalidate this APPR. A "U-rating" was not the result of unsatisfactory teaching or negative evaluations. Clearly an adverse employment action, this is another example of non-progressive discipline because the sole basis of this rating was on two unwarranted letters to file submitted by PS 2 Principal Goldman. Her main agenda was to never have me placed at her school again in retaliation for complaining that I had not been provided appropriate resources, expressing that I planned to submit an my EEOC charge, and that I was being bullied by colleagues. Knowing the ATR Unit's strategy to do so, she intentionally wrote me up. My ATR track has shown me new things I had never experienced: unwarranted letters to file, investigations, etc., -- all a part of the non-progressive fast-track to getting terminated, and the DOE doesn't bat an eye about it. I plead that this U-rating was a

reason provided for not attaining a scoring position, as stated by my FS Barrett. I demand that this APPR be invalidated and permanently destroyed.

200.       On September 11, 2017 at 11:45 pm, I asked for an alternate rotation than PS 85. Principal Chang had used discriminatory intimidation to ridicule, insult, and humiliate me in front of her entire staff because of my disability. A target, I did not feel safe.

201.       On September 20, 2017 I was assigned to IS 230, later recognized on the staff list and given a program on October 3, 2017 to work with a bridged 6/ 7 SCSE class, a bridged 7/8 SCSE Class, and a grade 8 SCSE Class.

2018

202.       On April 30, 2018, a renewal from Medical was sent, denied and closed.

203.       On June 14, 2018, an Accommodation Request was sent to NYCDOE, returned as "Not Medically Warranted" on July 6, 2018, with no interactive process whatsoever. An official list was not provided by the NYCDOE of job duties of an "ATR".

204.       From Sept. to Nov., 2018, I taught over 1,000 kids, ~43 of 45 classes at IS 141.

205.       On September 17, 2018, I put in a U-Rating Appeal Waiver so letters and APPR would be removed through the grievance process or the EEOC demands and stipulations.

2019

206.       In April of 2019, teachers were given a "Preference Sheet" for the following year. I filled one out but as an ATR have no building rights, no response was given.

207.       On May 14, 2019, my 8-person math team was chosen by the principal to be observed by QR evaluators, rated Well Developed within that domain.

208.       From May 18, 2018 to June 16, 2019, I applied for SE vacancies on the Open Market: PS 69, IS 141, IS 203, and PS 384. Beside my location, "ATR- Legal Returning" is listed, a warning to deter hiring agents, similar to "problem-code" upon my file. No response.

Overview/ Synopsis/ Pleadings:

I believe that the NYCDOE is liable because I have:

1. been subject to extensive discriminatory intimidation, ridicule, and humiliation
2. experienced a psychologically abusive work environment
3. experienced trauma because of animus shown by NYCDOE Administration
4. experienced alterations to the conditions of my employment which will have an ongoing impact on my career as a professional educator
5. experienced continued discrimination and retaliation against me due to the implicit bias against me for, but not limited to, my age (40 as of April 23, 2014), my disability and/or perceived disabilities, my demotion to the title of "ATR" and its implications thereof (i.e. lack of Advance ratings, various system red flags, etc.), requests for supplies, complaints about the school's non-compliance and violations- Special Education funding, laws, etc.
6. been retaliated against for requesting accommodations, and/or reporting my needs related to PTSD, anxiety, chronic depression, and/or Manic Depression diagnoses and symptom regulation
7. been retaliated against immediately following strong advocacy for students with Individualized Education Plans (IEPs)

8.  been retaliated against immediately following strong advocacy for my own mother related to taking FMLA to act as her financial need's guardian (Nassau Supreme Court Cases, upon request), health proxy and personal needs guardian
9.  been retaliated against immediately following an explicit, non-confidential explanation to the PS 2 UFT Representative about my EEOC charge against the NYCDOE, and the need to add the series of events taking place there, with the complaint in my hands
10. subject to inhumane treatment during my reassignment/suspension, during the 3020a proceedings and Accommodation Request decision, kept locked up in a secluded office for nearly one year without any job duties or responsibilities- not progressive discipline.
11. subject to inhumane treatment as both a teacher in excess and reassigned teacher

It is undeniably true that the NYCDOE did not act "reasonably, lawfully, and in good faith, without malice" or "in accordance with the constitution and laws of the US and the Charter and laws of the city of NY, and all applicable laws, by-laws, rules, and regulations." Animus had been harboring for years, the DOE's disposition was to destroy my career and/or terminate me since PS 87 Principal Berry told me that complaints about me had reached Chancellor Farina and since PS 87 Principal Berry escorted me out of the building in late May of 2014 to take some "time off", but did not record that I had taken any days off in the system.

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Jeannine Renee Lam<br>4125 50th Street, Apt 5 B<br>Woodside, NY 11377 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative<br>**Philip Reo,** | Telephone No. |
| **520-2017-02002** | **Investigator** | **(212) 336-3772** |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Kevin Berry                    12/29/17

Enclosures(s)                  **Kevin J. Berry,**              *(Date Mailed)*
**District Director**

cc:  **Robin Singer**
**Associate General Counsel - Office of Legal Services**
**NYC DEPT OF EDUCATION**
**52 Chambers Street, Room 308**
**New York, NY 10007**